**UNITED STATES of America, Appellee,**

v.

**Ronald Leland KELLEY, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Rodney Ray JIRUSKA, Appellant.**

**Nos. 90–1027, 90–1081.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1991.

Decided Feb. 5, 1992.

Chip J. Lowe, Des Moines, Iowa, argued (Paul A. Zoss, on brief), for appellant Rodney Ray Jiruska.

William G. Nicholson, Cedar Rapids, Iowa, argued, for appellant Ronald Leland Kelley.

Richard Louis Murphy, Asst. U.S. Atty., Cedar Rapids, Iowa, argued (Daniel C. Tvedt, on brief), for appellee.

Before LAY,* Chief Judge, HEANEY, Senior Circuit Judge, McMILLIAN, ARNOLD,** JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM and LOKEN, Circuit Judges, En Banc.

---

\* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

\*\* The HONORABLE RICHARD S. ARNOLD became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

JOHN R. GIBSON, Circuit Judge, joined by FAGG, BOWMAN, WOLLMAN, MAGILL and LOKEN, Circuit Judges.

We again visit the question of whether a district court can grant a downward departure from the Sentencing Guidelines for the defendant's substantial assistance to the government in the absence of either: (1) a government motion for a departure; or (2) a claim that the government's refusal to make such a motion is arbitrary, in bad faith, or in breach of a plea agreement. We have touched on this question in a series of cases,[1] including *United States v. Gutierrez*, 908 F.2d 349 (8th Cir.1990), which we vacated for rehearing en banc. In *Gutierrez*, the en banc court affirmed the district court by an equally divided vote, thereby leaving the question for another day. 917 F.2d 379 (8th Cir.1990). The cases we decide today present the question in an unusually narrow form, since the appellants forego constitutional arguments and simply urge that we are not bound to follow United States Sentencing Commission, *Guidelines Manual* § 5K1.1 (Nov. 1991) because it is a policy statement rather than a guideline. We affirm the district court's[2] judgment holding that it did not have the power to depart from the guidelines sentencing range in these cases.

Ronald Kelley and Rodney Jiruska pleaded guilty to involvement in a drug conspiracy, 21 U.S.C. § 846 (1988). Both entered plea agreements in which they agreed to assist the government in convicting co-defendants, but the government retained sole discretion concerning whether to move the court under U.S.S.G. section 5K1.1 to grant a downward departure for substantial assistance. Kelley and Jiruska made themselves available for interviews with investigators and testified at the trials of other defendants. The government attorneys stated that Jiruska was a truthful witness, but declined to move the court to depart from the guidelines, explaining that the government did not perceive Jiruska's testimony to be particularly valuable. The government attorneys were not satisfied with the candor of Kelley's testimony, since they claimed he understated the extent of the conspirators' criminal activity at his co-defendants' trials in comparison with his earlier statements. Moreover, while on pretrial release, Kelley attended a party at which a Mr. Melsha gave him cocaine, which Kelley said he flushed down a toilet. When he reported this to the government, the prosecutors asked him to wear a wire and engage Melsha in a conversation regarding the incident. Though Kelley did as requested, that investigation led the government to believe Kelley had paid for the cocaine and perhaps had used it. Due to his lack of candor and the fact that the prosecutors did not view Kelley's cooperation as particularly helpful, the government refused to make a departure motion. Since the government refused to make the motion, Kelley and Jiruska each moved the court for a downward departure. They each conceded that there was no bad faith issue. The court held that it was powerless to grant a departure for substantial assistance in absence of a government mo-

---

1. *United States v. Justice*, 877 F.2d 664 (8th Cir.), cert. denied, 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989); *United States v. Grant*, 886 F.2d 1513 (8th Cir.1989); *United States v. Smitherman*, 889 F.2d 189, 191 (8th Cir.1989), cert. denied, 494 U.S. 1036, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990); *United States v. Coleman*, 895 F.2d 501, 504 & n. 6 (8th Cir.1990); *United States v. Dobynes*, 905 F.2d 1192, 1197 (8th Cir.), cert. denied, — U.S. —, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990); *United States v. Oransky*, 908 F.2d 307 (8th Cir.1990); *United States v. Gutierrez*, 917 F.2d 379 (8th Cir.1990) (en banc) (affirming district court by equally divided vote); *United States v. Spees*, 911 F.2d 126, 128 (8th Cir.1990) (per curiam); *United States v. Hill*, 911 F.2d 129, 131 (8th Cir.1990) (per cu-

riam), *vacated and remanded for further consideration on other grounds*, — U.S. —, 111 S.Ct. 2845, 115 L.Ed.2d 1014 (1991); *United States v. Hubers*, 938 F.2d 827 (8th Cir.1991) (per curiam), cert. denied, — U.S. —, 112 S.Ct. 427, 116 L.Ed.2d 447 (1991); *United States v. Drake*, 942 F.2d 517 (8th Cir.1991) (per curiam); *United States v. Laird*, 948 F.2d 444 (8th Cir.1991).

2. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa. After this case was argued en banc, Judge Hansen was nominated to be a judge of this court, was confirmed by the Senate and assumed his position on December 2, 1991. Needless to say, Judge Hansen has not participated in the consideration of this case.

tion. The court did take the defendants' cooperation into account in choosing a sentence *within* the guidelines range.

Kelley and Jiruska appeal, arguing that the district court erred in holding that without a government motion it could not depart from the guidelines range on the grounds of assistance to the government. Because the issues they raise were the subject of a stalemate in *Gutierrez,* we granted original hearing en banc to address their arguments.

## I.

■ Since our first look at the issue in *United States v. Justice,* 877 F.2d 664 (8th Cir.), *cert. denied,* 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989), this circuit has been troubled by the issue of whether U.S.S.G. § 5K1.1 permits a court to depart downward from the guidelines range on the grounds of substantial assistance to the government if the government refuses to move for a departure. Our standard of review is de novo, because the district court's decision that it had no power to depart is a pure question of law. 18 U.S.C. § 3742(a)(1) (1988); *United States v. Doe,* 934 F.2d 353, 356 (D.C.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991). Though the government argues that this case presents an unreviewable refusal to depart, the real question is whether the district court was correct in its opinion that it had no power to depart, not whether it would have chosen to depart if it had the power.

■ Section 5K1.1 provides: *"Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines...."* (emphasis added). The

section is labeled as a "policy statement," rather than a guideline.[3]

Kelley and Jiruska argue that because section 5K1.1 is a policy statement, rather than a guideline, it is not binding on the courts and therefore the courts can reject it on policy grounds.

We have considered U.S.S.G. § 5K1.1 in depth in earlier decisions and resolved certain preliminary questions about the section which Kelley and Jiruska do not reargue. In *Justice,* 877 F.2d at 667, we held that the language permitting departure "upon motion of the government" makes the prosecutor's motion a prerequisite to departure. Most of the other circuits have also held that under section 5K1.1, the prosecutor's motion is a necessary step for a substantial assistance departure. *United States v. La Guardia,* 902 F.2d 1010, 1013–18 (1st Cir.1990); *United States v. Huerta,* 878 F.2d 89, 91 (2d Cir.1989), *cert. denied,* 493 U.S. 1046, 107 L.Ed.2d 839 (1990); *United States v. Bruno,* 897 F.2d 691, 696 (3d Cir.1990); *United States v. Francois,* 889 F.2d 1341, 1345 (4th Cir.1989), *cert. denied,* 494 U.S. 1085, 110 S.Ct. 1822, 108 L.Ed.2d 951 (1990); *United States v. Levy,* 904 F.2d 1026, 1035–36 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991); *United States v. Donatiu,* 922 F.2d 1331, 1334–35 (7th Cir. 1991); *United States v. Vargas,* 925 F.2d 1260, 1267 (10th Cir.1991); *United States v. Chotas,* 913 F.2d 897, 900 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991); *United States v. Doe,* 934 F.2d at 361. However, the Fifth Circuit does not view the section as requiring a prosecutor's motion. *United States v. White,* 869 F.2d 822, 829 (5th Cir.) (per curiam), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). *Cf. United States v. Keene,* 933 F.2d 711, 715 n. 5 (9th Cir.1991) (characterizing issue of

---

**3.** 18 U.S.C. § 3553(e) (1988) is a parallel provision dealing with departing below a statutory minimum sentence for substantial assistance:

  **Limited authority to impose a sentence below a statutory minimum.**—Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence

so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

whether sua sponte departure could ever be appropriate as undecided in Ninth Circuit); *Chotas*, 913 F.2d at 903 (dissent arguing that government motion not intended as "absolute prerequisite" to departure).[4]

In *Justice*, we also stated that the court cannot avoid the prerequisite of the prosecutor's motion by simply departing under another guideline section to reward the assistance. 877 F.2d at 666. 18 U.S.S.G. § 3553(b) (1988) and U.S.S.G. § 5K2.0 (Policy Statement) permit the court to depart if the case involves a relevant factor that the Sentencing Commission did not adequately take into account in formulating the guidelines. In *Justice*, we held that the Commission took substantial assistance into account by adopting section 5K1.1 and that therefore 18 U.S.S.G. § 3553(b) would not authorize departure on this ground. 877 F.2d at 666. *Accord United States v. Khan*, 920 F.2d 1100, 1107 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991); *United States v. Agu*, 949 F.2d 63, 65–66 (2d Cir.1991); *Chotas*, 913 F.2d at 900.[5]

We have also approved generally the constitutionality of the prosecutor's motion requirement, while noting that situations could arise in which the motion requirement together with other facts could be part of a constitutional violation. We have held that the motion requirement is not an unconstitutional infringement on the separation of powers. *Grant*, 886 F.2d at 1514. *Accord United States v. Spillman*, 924 F.2d 721, 724–25 (7th Cir.1991); *Huerta*, 878 F.2d at 91–93 (section 3553(e)); *United States v. Musser*, 856 F.2d 1484, 1487 & n. 3 (11th Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); *United States v. Kuntz*, 908 F.2d 655, 657 (10th Cir.1990). We have also rejected the substantive due process argument that defendants have a right to have a court consider evidence of their cooperation in deciding whether to depart. *Grant*, 886 F.2d at 1514. *Accord La Guardia*, 902 F.2d at 1015–16; *Doe*, 934 F.2d at 357; *Levy*, 904 F.2d at 1035–36. Other circuits have similarly rejected procedural due process challenges. *E.g., Doe*, 934 F.2d at 360–61; *Donatiu*, 922 F.2d at 1333–34. However, we and other circuits have suggested constitutional limits to the prosecutor's discretion under section 5K1.1. Courts have pointed out that if the prosecutor acted from invidious motives or to punish the exercise of constitutional rights, there could be a constitutional violation, *United States v. Bayles*, 923 F.2d 70, 72 (7th Cir.1991); *Doe*, 934 F.2d at 361, and our own cases have suggested that prosecutorial misconduct, including "arbitrary" failure to make the motion, could amount to a due process violation. *E.g., United States v. Coleman*, 895 F.2d 501, 504 n. 6 (8th Cir.1990). *But see United States v. Smith*, 953 F.2d 1060 (7th Cir.1992). *Cf. United States v. Drown*, 942 F.2d 55 (1st Cir.1991) (remanding for resentencing in case in which prosecutor's failure to make

---

**4.** The Sentencing Commission has recently published for comment a proposed amendment to section 5K1.1 that would eliminate the prosecutor's motion requirement. *See* 57 Fed.Reg. 90, 112 (Jan. 2, 1992).

**5.** The Second Circuit has recently rejected the argument that sections 3553(b) and 5K2.0 permit the courts to avoid the section 5K1.1 motion requirement based upon substantial assistance in the investigation or prosecution of another person. It discusses the distinction between the two guidelines, particularly pointing to the language in section 5K2.0 that it applies where there is a mitigating circumstance not taken into consideration by the guidelines. *Agu*, 949 F.2d at 67. Judge Beam's dissent is based upon the availability of the procedure in section 5K2.0 to depart without a government motion. The parties to this case have not raised this issue. *Agu* pointed to the availability of a section 5K2.0 departure for cooperation in some circumstances. *Agu* observed that section 5K1.1 refers to cooperation with the prosecution, whereas section 5K2.0 could be the basis for a departure on the grounds of cooperation with the courts, and may apply in cases in which the cooperation was of a different nature than cooperation in prosecuting others (e.g., cooperation in saving the life of an informant). *But see United States v. Romolo*, 937 F.2d 20, 25 (1st Cir.1991) (it is theoretically possible for a prosecutor's refusal to make a U.S.S.G. § 5K1.1 motion to become a circumstance warranting departure under U.S.S.G. § 5K2.0). *See also United States v. Goroza*, 941 F.2d 905, 909 (9th Cir.1991). These issues involving section 5K2.0 are simply not before us in this case.

motion was based on misapprehension of the relationship between section 5K1.1 and Fed.R.Crim.P. 35(b)).

Kelley and Jiruska do not urge us to reconsider these issues settled in our earlier cases, but instead argue that the language requiring the courts to sentence according to the guidelines, 18 U.S.C. § 3553(b), does not include the policy statements and that therefore the courts are not bound to follow the policy statements.[6]

Congress has made it clear that it intends the policy statements to be taken seriously. The statutes defining the Commission's duties authorize it to promulgate guidelines and general policy statements. 28 U.S.C. § 994(a)(1), (2) and (3) (1988). 18 U.S.C. § 3553 (1988) requires in a number of passages that the court consider the policy statements in imposing a sentence. The court shall consider both "the kinds of sentence and the sentencing range" set forth in the guidelines, 18 U.S.C. § 3553(a)(4) (1988), and "any pertinent policy statement issued by the Sentencing Commission...." 18 U.S.C. § 3553(a)(5). The same statute provides that a sentence shall be imposed under the guidelines unless the court finds that an aggravating or mitigating circumstance has not been adequately taken into consideration by the Commission in formulating the guidelines, and in so determining "the court shall consider only the sentencing guidelines, *policy statements, and official commentary of the Sentencing Commission*" 18 U.S.C. § 3553(b) (emphasis added). Further, in the absence of applicable guidelines the court shall consider the relationship of the sentence to guideline sentences applicable to similar offenses and offenders "and to the applicable policy statements of the Sentencing Commission." 18 U.S.C. § 3553(b). The final subsection dealing with the requirement of a motion by the government to impose sentences below the mandatory minimum states: "Such sentence shall be imposed in accordance with the guidelines

and policy statements...." 18 U.S.C. § 3553(e).

Other more specific statutes require consideration of the guidelines. For instance, 18 U.S.C. § 3582(a) (1988) requires that the court "shall consider any pertinent policy statements" in determining whether to recommend an appropriate type of prison facility. The court may modify a term of imprisonment upon motion by the Director of the Bureau of Prisons after considering the factors set forth in section 3553(a) (which, as we have seen, includes policy statements) if it finds extraordinary and compelling reasons warrant a reduction and that such reduction is "consistent with applicable policy statements" of the Commission. 18 U.S.C. § 3582(c)(1)(A) (1988). If a sentencing range has been lowered by the Commission, the district court may reduce the term "if such reduction is consistent with applicable policy statements." 18 U.S.C. § 3582(c)(2) (1988). Further, the court may order conditions of supervised release "consistent with any pertinent policy statements" issued by the Commission. 18 U.S.C. § 3583(d)(3) (1988).

These statutes, with their frequent use of mandatory language, all evidence congressional intent that policy statements be considered and that the courts' actions be consistent with policy statements. There is, on the other hand, the statutory requirement that amendments to the guidelines, but not to the policy statements, be submitted to Congress as part of the amendment process. *See* 28 U.S.C. § 994(p) (1988). We simply do not believe that this provision undermines the authority elsewhere given to the policy statements. In any case, the policy statement at issue here was in fact submitted to Congress, along with the guidelines, *see* United States Sentencing Commission, Sentencing Guidelines and Policy Statement 5.29 (1987); U.S.S.G.App. C. (amendment no. 290); United States Sentencing Commission, 1989 Annual Report 19, thereby giving Congress the same chance to disapprove the policy

---

**6.** The Second Circuit recently rejected this argument without discussion. *Agu,* 949 F.2d at 66–67. The Seventh Circuit rejected a similar argument—that "by writing [section 5K1.1 as] a poli-

cy statement rather than a guideline the Commission has signalled that it does not think its treatment definitive." *United States v. Smith,* 953 F.2d 1060, 1063 (7th Cir. 1992).

statement as it had to disapprove guidelines. *See* 28 U.S.C. § 994(p) (1988).

Kelley and Jiruska argue that language of the Sentencing Commission shows that it considered the policy statements "nonbinding". They point to U.S.S.G. § 1B1.7 in which the Commission states: "As with a *policy statement,* such commentary *may provide guidance* in assessing the reasonableness of any departure from the guidelines" (emphasis added). They also rely on U.S.S.G. Ch. 1, Pt. A, intro. 4(b) (Policy Statement) which refers to the grounds for departure listed in Ch. 5, Part K (which are denominated as "policy statements") as "suggested" grounds. The use of the words "may" and "suggest" in these contexts does not give the courts authority to ignore the commentary and policy statements—rather, by using these words the Commission simply acknowledges that in any given case the policy statements and commentary may not, *by their own terms,* be relevant or determinative. *See, e.g.,* U.S.S.G. § 2A1.1 (1990) (comment. n. 1) ("If the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted").

It is obvious that, as Kelley and Jiruska argue, there is significance in what material is designated as guidelines and what material is designated as policy statements accompanying the guidelines. Congress instituted the distinction between the two forms of authority in 28 U.S.C. § 994(a)(1) and (2), which designate different subject matters to be dealt with by guideline and policy statements, respectively. Congress enacted no statutory provision explaining the difference in authority between guidelines and policy statements, but there is an illuminating comment in the legislative history. In a discussion concerning 18 U.S.C. § 3742, which provides for appeal in the event a sentence is imposed "as a result of an incorrect application of the sentencing guidelines," the Senate Report stated:

It should be noted that a sentence that is inconsistent with the sentencing guide-

lines is subject to appellate review, while one that is consistent with guidelines but inconsistent with the policy statements is not.[7] This is not intended to undermine the value of the policy statements. It is, instead, a recognition that the policy statements may be more general in nature than the guidelines and thus more difficult to use in determining the right to appellate review. Nevertheless, the sentencing judge is required to take the policy statements into account in deciding what sentence to impose and it is expected that the policy statements will be consulted at all stages of the criminal justice system, including the appellate courts, in evaluating the appropriateness of the sentence and corrections program applied to a particular case.

S.Rep. No. 225, 98th Cong., 2d Sess. 167–68 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3350 (footnotes omitted). This excerpt confirms the idea that the distinction between policy statements and guidelines is a meaningful one. It indicates that it is the relative specificity and generality of the provisions that distinguishes material to be included in a policy statement from that to be included in guidelines. The language in the Senate Report referring to policy statements is indeed language of guidance, not of command, because the policy statements are not a code and are not meant to be applied as a code. Similarly, as Judge Heaney's dissent points out, *infra* at 36, Congress only required the courts to *"consider"* the policy statements, but to *"impose* a sentence of the kind, and within the range" of the guidelines. 18 U.S.C. § 3553(a) & (b). Congress' use of the word "consider" does not mean that the courts can reject the policy statements if they please, but only shows that Congress anticipated that the more general material to be included in a policy statement would frequently be of a nature to illuminate, though not necessarily determine, the proper outcome.

This said, what conclusion do we then draw concerning the defendants' argu-

---

**7.** This would not preclude appeal in our case since Kelly and Jiruska are arguing that the court erred in ascertaining the law—not in failing to follow a policy statement, but in mistaking the effect to be given to a policy statement.

ments that we need not follow Policy Statement section 5K1.1? The statements in the legislative history might support arguments that a certain policy statement is too general to follow or was not drafted to foresee special eventualities relevant in a particular case. For instance, the general nature of policy statements would support an argument that section 5K1.1 simply does not deal with a situation in which the prosecutor breaches a plea agreement or in which reasonable minds could not differ on the extent and value of the defendant's assistance.

This and other circuits have dealt with the question of whether section 5K1.1 was intended to apply to all possible fact situations or whether it may well be too general to govern certain atypical cases. The answer depends on the purpose of the motion requirement. Some circuits have seen the purpose of the motion requirement as giving the prosecutor a powerful law enforcement tool, which could be undermined by judicial interference in the prosecutor's decision to move or withhold the motion. For instance, the Fourth Circuit views the provision as forcing a defendant who wants a departure to secure that relief by means of a plea agreement, rather than resort to the court. By these lights, the only implicit limits on the government's discretion are to make the motion if it has *promised* to make it, and the court will intervene only if the government breaches a plea agreement. *See United States v. Raynor*, 939 F.2d 191, 195 (4th Cir.1991); *United States v. Wade*, 936 F.2d 169, 172 (4th Cir.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 635, 116 L.Ed.2d 653 (1991). *See also United States v. Gonzales*, 927 F.2d 139, 145–46 n. 5 (3d Cir.1991) (reserving question of whether court would intervene if defendant claimed breach of plea agreement). Other circuits, including ours, place less emphasis on section 5K1.1 as a prosecutorial tool and view U.S.S.G. § 5K1.1 as providing a just reward for a cooperative defendant. These courts reason that the prosecutor's motion requirement is simply a device to promote administrative efficiency by putting the first decision about the extent of the defendant's cooperation in the hands of the pros-

ecutor, who is in the best position to evaluate that cooperation. *E.g., Grant*, 886 F.2d at 1514. The section 5K1.1 device depends on institutional incentives, which provide a check on the prosecutor's discretion, in that prosecutors must treat defendants fairly for fear of discouraging future defendants from cooperating. *See, e.g., Huerta*, 878 F.2d at 93. However, if section 5K1.1 is viewed as establishing a reward for cooperation, the defendant can argue that if the government fails to make the requisite motion in a case in which reasonable minds could not differ about the substantiality and value of the assistance, there has been a failure of the section 5K1.1 mechanism that should be corrected by the courts. The possibility of an exception to the prosecutor's motion requirement in an "egregious case" is suggested in our cases. *E.g., Justice*, 877 F.2d at 668–69. Our *Coleman* case, 895 F.2d at 504 n. 6, suggests that an egregious case might present due process concerns obviating the prosecutor's motion requirement. Other circuits have also suggested that there is an implicit limit on the prosecutor's discretion to withhold the motions in an extremely clear cut-case. *See, e.g., United States v. Mena*, 925 F.2d 354, 355–56 (9th Cir.1991); *Vargas*, 925 F.2d at 1267; *see also Chotas*, 913 F.2d at 901 (notes argument but says not an issue in case at bar).

Here, the defendants do not argue that their cases present peculiar facts that take them out of the intendment of section 5K1.1. Kelley and Jiruska have explicitly conceded that there is no question of prosecutorial misconduct in their cases. Nor do they argue that the prosecution used its discretion to withhold the motion in any other way not envisioned by the Commission. Kelley and Jiruska's argument seems to be that the court can reject the "suggestions" of the policy statement, not because the policy statement was never intended to apply to their cases, but because the approach adopted by the Sentencing Commission was simply not the best way to handle the problem at hand. Nothing could be more contrary to Congress' intent in providing for the Sentencing

Guidelines than to permit the courts to second-guess the Commission in that way.

Consistency of application in sentencing law was a paramount goal in establishing the Sentencing Commission and in providing for the Sentencing Guidelines, as reflected in 28 U.S.C. § 991(b)(1)(B) (1988) and myriad statements in the legislative history. *E.g.,* S.Rep. No. 225, 98th Cong., 2d Sess. 38, 41–46, 52 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3221, 3224–29, 3235; *Burns v. United States,* — U.S. —, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991); *La Guardia,* 902 F.2d at 1014. For us to hold that courts could refuse to follow the policy statements in a case in which the meaning of the policy statement is clear and undoubtedly applicable to the facts of the case would be to introduce the most far-ranging element of uncertainty into the application of the Guidelines. A significant number of crucial issues are dealt with only by policy statement (*see, e.g.,* U.S.S.G. §§ 5H1.1–5H1.10, dealing with the proper consideration of age, educational and vocational skills, mental and emotional state, etc., by policy statement rather than guideline), and a ruling that courts could reject a legitimate policy statement merely because they disagree with it would leave these areas essentially unregulated.

Moreover, such a holding would spill over into the related area of guideline commentary, which would also have to be characterized as "non-binding" under Kelley and Jiruska's theory. Guideline § 1B1.7 [8] outlines the functions the commentary may perform, including that of "suggesting" departures from the guidelines. Section 1B1.7 specifically notes that commentary governing departures "is to be treated as the legal equivalent of a policy statement." Many of the guidelines are skeletal provi-

sions for which the commentary provides crucial supplementation. For instance, U.S.S.G. § 1B1.1 comment. (n. 1) gives definitions of key terms used in the guidelines in the commentary, rather than in the guideline itself. This circuit recognized the importance of the commentary when it adopted a reading of a guideline which was mandated by the commentary, though not by the guideline read alone. *United States v. Smeathers,* 884 F.2d 363, 364 (8th Cir. 1989) (per curiam).

The Ninth Circuit discussed the authoritativeness of guidelines commentary in its recent en banc opinion, *United States v. Anderson,* 942 F.2d 606 (9th Cir.1991). The *Anderson* case involved commentary used to explain or interpret guidelines. At 612; *see* U.S.S.G. § 1B1.7. The Ninth Circuit held that such commentary must always be consulted and followed, unless the commentary actually conflicts with a guideline. *Id.* at 612–14.

Other circuits considering the question raised in *Anderson* have concluded that "courts cannot ignore the Commentary", *United States v. DeCicco,* 899 F.2d 1531, 1537 (7th Cir.1990), and have applied as law an element appearing only in the commentary, and not in the guideline itself. *Id.; accord United States v. Bierley,* 922 F.2d 1061, 1066 (3d Cir.1990). *See also United States v. Rutter,* 897 F.2d 1558, 1561 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). These holdings recognizing the obligation to follow the commentary would logically compel the conclusion that courts similarly must follow valid policy statements; conversely, a holding that the courts could reject policy statements at will would also affect application of the commentary, throwing the

---

**8.** § 1B1.7. **Significance of Commentary**

The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. *See* 18 U.S.C. § 3742. Second, the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from

the guidelines. Such commentary is to be treated as the legal equivalent of a policy statement. Finally, the commentary may provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline. As with a policy statement, such commentary may provide guidance in assessing the reasonableness of any departure from the guidelines.

whole guidelines system into disarray and uncertainty.

Thus, a holding today that the courts can disregard the prosecutor's motion requirement in U.S.S.G. § 5K1.1 because they consider it ill-advised would seriously damage the efficiency of the Sentencing Guidelines in bringing about the consistency Congress sought. We decline to inflict this damage, and therefore reject the defendants' argument that section 5K1.1 is not binding.

## II.

■ Finally, there is one unelaborated statement in Jiruska's original brief that 28 U.S.C. § 994(n) (1988)[9] does not "require a motion on the part of the government as a prerequisite to the Court's taking into account a defendant's substantial assistance." Jiruska's counsel also made a comment at oral argument that the Commission "perhaps overreached" in adopting section 5K1.1. These cryptic comments do not add up to a *Chevron*[10]-type argument that section 5K1.1 is not a reasonable interpretation of section 994(n). However, if Jiruska has indeed attempted to raise the *Chevron* issue in this case, we would re-

spond as we did in *Grant,* 886 F.2d at 1514, that the similarity between U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) persuades us that the Commission acted reasonably and permissibly. *Accord Doe,* 934 F.2d at 359–60.[11]

In sum, the district court did not err in holding that it could not entertain a substantial assistance departure motion made by the defendant rather than the government.

We affirm.

BEAM, Circuit Judge, concurring in part and dissenting in part, joined by McMILLIAN, Circuit Judge, in that portion of the opinion that is a dissent.

The question I raise is whether the district court ever has the authority to depart sua sponte from a guideline-specified sentence in this type of case. In my view, the answer is yes. I agree with the majority that section 5K1.1 requires a motion from the prosecution for departure. I believe, however, that guideline section 5K2.0 provides alternative authority to depart under limited circumstances.[1]

9. 28 U.S.C. § 994(n) provides:
    The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

10. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984).

11. Judge Heaney's dissent argues that section 5K1.1 "runs counter to congressional directive," *infra* at 763, because the Commission failed to assure that the guidelines take into account a defendant's assistance, as required by section 994(n). But Congress only directed the Commission to construct a system taking into account the general propriety of reducing sentences in return for cooperation, not to assure that the sentence would be reduced in every such case.
    Section 994(n) requires only that the *guidelines* recognize the 'general appropriateness' of lowering a sentence for substantial assistance. It is possible for the guidelines to recognize that as a general principle it is appro-

priate to impose a lower sentence on a defendant who substantially assists the government while at the same time not absolutely requiring the district court to consider this factor in every case.
*United States v. Lewis,* 896 F.2d 246, 247 (7th Cir.1990) (emphasis in original). Moreover, section 5K1.1 does not under any circumstances keep the sentencing court from considering the defendant's substantial assistance in sentencing *within* the guidelines range. *See* U.S.S.G. § 1B1.4; *United States v. La Guardia,* 902 F.2d at 1016; *see also United States v. Huerta,* 878 F.2d at 93 (same issue with regard to § 3553(e)).
    Judge Heaney further states that the section 5K1.1 motion requirement violates 18 U.S.C. § 3661 by limiting the information a court can consider "concerning the background, character, and conduct of a person convicted of an offense." *Infra* at 763. In fact, this objection is groundless since the sentencing court can consider substantial assistance in sentencing within the guidelines range.

1. Judge John R. Gibson is correct in stating in the majority opinion that the parties here have not raised the issue of departure under section 5K2.0. *See* footnote 5, majority opinion. Thus, in this case, the majority result is correct if section 5K1.1 binds and limits the actions of the

Section 3553(b) of 18 United States Code and implementing guideline sections provide authority for the district court to depart from a guideline calculation.

The applicable statute, 18 U.S.C. § 3553(b), states:

The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, *or to a degree, not adequately taken into consideration* by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

18 U.S.C. § 3553(b) (1990) (emphasis added). Guideline section 5K2.0 "fleshes out" the statutory language and like section 5K1.1 is labeled a "Policy Statement." Specific language in section 5K2.0 makes my point. It states, in part,

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a

sentence different from that described." Circumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what extent departure is warranted can only be made by the courts.... Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.*, as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

Where, for example, the applicable offense guideline and adjustments *do take into consideration a factor listed in this subpart,*[2] *departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense.*

U.S.S.G. § 5K2.0 (emphasis added).

Thus, the Sentencing Commission, in my view, has been required by Congress to

---

sentencing judge. That, of course, is the essence of the dispute as stated in the majority opinion and the dissent authored by Judge Heaney.

Kelley and Jiruska agreed to (and allegedly did) assist the prosecutor in convicting their co-defendants. *See* majority opinion at 750–51. This activity fits within that described in application note 2 of the commentary to section 5K1.1 as assistance in the "investigation and prosecution of criminal activities." Accordingly, if limited to such a factual predicate, I concede that the use of alternative authority under section 5K2.0 for departure as a result of *such activity* should be reserved for the unusual case.

Further, based upon my understanding of the majority's footnote 5, there appears to be agreement that a strong argument can be made for less limited sua sponte departure under section 5K2.0, as a reward for assistance to "the court"

or, perhaps, government officials other than investigators and prosecutors. At least, it seems clear that this decision does not deal with those issues.

**2.** The original policy statement was entitled "GENERAL PROVISIONS" and used the word "part." It was amended on November 1, 1990, to make the title "OTHER GROUNDS FOR DEPARTURE" and to refer to "subpart" rather than "part" in paragraph two and to make other changes. The Commission, in Appendix C, calls these "editorial and clarifying changes." If these changes were made to totally eliminate "substantial assistance to authorities" as a consideration under section 5K2.0, I submit that they violate the intent of 18 U.S.C. § 3553(b). In any event, I do not believe the changes eliminate, nor were they intended to eliminate, consideration of substantial assistance under section 5K2.0.

deal with departures for "substantial assistance to authorities" both specifically, in section 5K1.1, and generally, in section 5K2.0. As indicated above, section 5K2.0 provides that even where a factor is specifically taken into consideration by the Commission, and certainly under the guidelines substantial assistance is a factor to be considered at sentencing, the sentencing judge is warranted in going outside the guideline-specified sentence under, at least, extraordinary circumstances—without a motion from the government.

The majority opinion seems to generally accept this premise when it concedes that our cases recognize an egregious case exception. *See, e.g., United States v. Justice*, 877 F.2d 664, 668–69 (8th Cir.), *cert. denied*, 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989). Otherwise, the majority analysis of the binding effect of section 5K1.1 provides no basis for any departure, whatever the circumstances, short of finding a constitutional violation. Surely guideline policy statements should not be construed with such rigidity.

While I agree that an egregious case provides the basis for departure without a motion by the government, I believe that a lesser situation can also trigger the authority to depart under section 5K2.0.

The majority states, *supra* at 755, that this circuit joins others in supporting the notion that in measuring assistance given, the prosecutor "is in the best position to evaluate [the] cooperation. *E.g., Grant*, 886 F.2d at 1514." This is sometimes not the case. A district judge who has supervised several different cases involving the same drug conspiracy may have, for instance, information not readily available to the Assistant United States Attorney prosecuting a particular case. This information may have come through presiding over the presentation of evidence, the issuance of warrants, the authorization of pen registers and wiretaps or even through infor-

mation derived from the in camera issuance of subpoenas in related cases. *See, e.g.,* Fed.R.Crim.P. 17. In fact, the trial judge will frequently have a better view of the quality of assistance given by an individual who has testified in several cases than the prosecutor in a given case.

Finally, as briefly discussed in footnote 1, *supra*, "substantial assistance to authorities" may come in ways that do not even directly involve the office of the United States Attorney, the agency which the majority looks to for guidance. For instance, the probation officer may call upon a criminal defendant for information necessary to prepare a presentence report on a different defendant in another case. Sometimes this information flows through the probation office to different jurisdictions without any knowledge being imparted to the local United States Attorney and his staff. Since the policy statements encompass "investigation" of other persons, an activity that is contemplated in the presentence process, especially, for instance, in determining the total value of stolen property, the total weight of drugs or many other similar issues involved in the sentencing decision, the trial judge may sometimes be in the superior position with regard to information about "assistance to authorities."

Given the myriad of situations in which "assistance" may be given, to allow the prosecutor to act as a "plug" in the process in every instance disserves the language of the statute and disregards the real world of sentencing. Thus, I would apply section 5K2.0 when appropriate.[3]

In sum, Kelley and Jiruska have not met the standard I would establish for cases such as this and I would affirm the sentence imposed by the district court. I do, however, dissent from the idea that a district court does not have the authority to depart from a guideline-specified sentence as a reward for substantial assistance with-

---

3. It may be that some general guidance on departures for assistance will soon be provided by the Supreme Court. *See United States v. Wade*, 936 F.2d 169 (4th Cir.), *cert. granted*, —— U.S. ——, 112 S.Ct. 635, 116 L.Ed.2d 653 (1991) (issues addressed by the circuit court included

whether the district court had authority, absent a motion filed by the government, to depart downward from a mandatory minimum sentence and whether the defendant is entitled to an explanation why the government refused to make a motion).

out a motion from the prosecutor in a proper case.

LAY, Chief Judge, dissenting, joined by McMILLIAN, Circuit Judge.

I join the dissents of Judges Heaney and Beam. I also express an additional concern relating to the majority opinion: In nullifying the discretion of the district court to depart from the particular cases, this court encourages further detachment of the judiciary from its traditional and vital involvement in individualized sentencing.

Notwithstanding the sentencing guidelines, Congress has made it clear that individualized sentencing remains the hallmark of our criminal justice system. As the legislative history of PL98–473 makes clear:

The Committee does not intend that the guidelines be imposed in a mechanistic fashion. It believes that the sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case. The purpose of the sentencing guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences. Indeed, the use of sentencing guidelines will actually enhance the individualization of sentences as compared to current law. Under a sentencing guidelines system, the judge is directed to impose sentence after a comprehensive examination of the characteristics of the particular offense and the particular offender. This examination is made on the basis of a presentence report that notes the presence or absence of each relevant offense and offender characteristics. This will assure that the probation officer and the sentencing judge will be able to make informed comparisons between the case at hand and others of a similar nature.

18 U.S.C. § 3235 (Supp. V, 1987). In establishing the Sentencing Commission, Congress specifically stated that

[t]he purposes of the United States Sentencing Commission are to

(1) establish sentencing policies and practices for the Federal criminal justice system that ...

B. provide certainty and' fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while *maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices....*

28 U.S.C. § 991(b) (Supp. V, 1987) (emphasis added). As Judge Beam points out, Congress' intention that sentencing authority be flexible is unequivocally expressed in 18 U.S.C. § 3553 (Supp. V, 1987). There Congress stresses that a court should impose a sentence sufficient to comply with the purposes set forth in the statute, but a sentence not greater than necessary to comply with these purposes. The language of section 3553 and the language of section 991(b)(1) that the sentencing practices provide certainty and fairness, avoid unwarranted disparities, *and* consider mitigating factors are further evidence that Congress intended the guidelines to act, not as rigid strictures, but as tools to be used by the court when determining an individualized sentence. "The sentencing court may impose a sentence outside the range established by the applicable guideline...." U.S.S.G.A. § 5K2.D.[1] Judge Stephen Brey-

---

**1.** The Commission has now promulgated proposed amendments under its rule making power which seeks to emphasize its protection under section 5.K.1 that before the court may consider substantial assistance as a factor allowing departure a motion by the government must be made:

Reason for Amendment: In two recent cases, courts of appeals reached opposite results on

the issue of whether, under the policy statement, a court could depart below the guideline range in the absence of a government motion. Neither case involved a mandatory minimum, and neither involved a situation in which the government acted in bad faith or

er, one of the principal authors of the guidelines, has strongly expressed his agreement that the guidelines authorize departure in "atypical" cases. *See* Breyer, *The Federal Sentencing Guidelines and Key Compromises upon Which They Rest*, 17 Hofstra L.Rev. 1, 45–50 (1988).[2] The authors of the Sentencing Reform Act did not seek to eliminate judicial discretion. Judges need not and ought not follow the guidelines when aggravating or mitigating circumstances are present in a particular case.

The effect of the majority's decision is to treat the Commission's policy statements as acts of Congress, thereby discarding the principles normally applied when reviewing the actions of administrative agencies. *See*

Wright, *Bureaucrats & the Administrative Law Perspective on the Federal Sentencing Commission*, 79 Calif.L.Rev. 1, 47 (1991). Oddly enough we fail to apply these principles to an agency within our own judicial branch. *See* Buffone, *Control of Arbitrary Sentencing Guidelines: Is Administrative Law the Answer?* Fed.Sent.Reporter 137, Nov./Dec. 1991.[3]

As the Supreme Court observed in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), the power of an administrative agency is formulation of policy to fill any gap left by Congress. However, *Chevron* also makes clear that "[t]he judiciary is the final au-

---

breached an agreement; however, in both cases the district court found that the defendant had rendered substantial assistance and, since § 5K1.1 was "only a policy statement," departed below the guideline range. At the appellate level, the Eighth Circuit ultimately upheld the departure (*U.S. v. Gutierrez,* [908 F.2d 349] No. 89–1950 (8th Cir. Nov. 1, 1990)), while the Eleventh Circuit reversed (*U.S. v. Chotas,* 913 F.2d 897 (11th Cir.1990)). This amendment is designed to reinforce the view of the Eleventh Circuit that the Commission has adequately considered the mitigating circumstance of substantial assistance by a defendant and has determined that this circumstance should not result in a downward departure absent the prerequisite government motion. At the same time, the amendment is designed to recognize that, where the court finds that the government in bad faith breached an agreement to file the requisite motion, consideration of a departure without a government motion may be warranted.

56 Fed.Reg. 1890 (1991).

Congress has not yet passed this amendment. The Judicial Conference has not taken a position on this question. However, Judge Vincent L. Broderick, Chairperson of the Committee on Criminal Law & Probation Administration of the Judicial Conference of the United States, stated on March 5, 1991, before the Commission the following:

In some districts the major tool to induce bargains is the departure under 5K1.1 for substantial assistance to the government. Our Committee engaged in lengthy consideration of problems created by this guideline. On the issue of whether a motion by the government should be required for this departure (proposed amendment 35), we concluded that requiring a motion would prevent courts from having to make difficult determinations of the extent of a defendant's cooperation.

We are in substantial agreement with the Commission's resolution of this issue.

Fed.Sentencing Rep. 281, Mar./Apr. 1991.

It seems to me this statement is not responsive to the Commission's proposal. When sentencing, federal judges have long appraised a defendant's cooperation or lack thereof. I respectfully submit the court is in a position to accurately judge the objective facts set forth in a PSI or proffered by the defendant. A court can also more objectively appraise the government's refusal to make a motion where the facts would seem to support a motion being made. Federal judges are continually engaged in "difficult determinations."

2. Judge Breyer is no longer a member of the Commission.

3. In a commentary on Professor Wright's article, Samuel J. Buffone, the authority who was chair of the ABA Criminal Justice Section's Committee on the Federal Sentencing Guidelines, stated:

Public support for the judicial process is rooted, in part, in a perception of the overall fairness and integrity of the process. The Commission's placement in the judicial branch argues for application of judicial oversight to ensure that the agency's decision-making process meets the minimal standards of the judicial branch and will garner similar public support. For there to be intrabranch integrity, judges must have the freedom not to be deferential to an agency within their own branch and to exercise the same critical review of Commission action which they apply to other administrative agency determinations. The Commission does not engage in adjudication and cannot derive legitimacy from the trappings of judicial fairness which have supported other administrative agency actions.

Fed.Sentencing Rep. 137, Nov./Dec. 1991.

thority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* n. 9. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 843, 104 S.Ct. at 2782. The majority inexplicably overlooks these principles of statutory construction.

I strongly agree with Judge Beam's cogent statement that "guideline policy statements should not be construed with such rigidity." This, of course, is also the primary premise upon which Judge Heaney's dissent relies. The majority ignores congressional intent and by its inflexible construction further weakens the fundamental role of the article III judge in the sentencing process, thereby imperiling the process of providing individualized sentences.

HEANEY, Senior Circuit Judge, dissenting, joined by LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

Today the court further restricts the discretion of district judges in the sentencing process by denying their authority to depart from the guidelines based on a defendant's substantial assistance without a government motion. It is difficult to understand why the court insists on so limiting the district court's discretion. The guidelines' enabling legislation does not require a motion, and Congress has not approved the motion "requirement" as part of a binding guideline. No sound public policy reasons exist for treating the motion "requirement" as binding. To the contrary, placing the power in the prosecutor's hands unfairly skews the sentencing process. When the prosecution declines to make a motion for substantial assistance, it need not give a reason to the defendant, the court, or the public.[1] This encourages secret, inconsistent, and arbitrary actions

by the executive branch, particularly because the Department of Justice has articulated no meaningful policy to govern substantial assistance departures. Accordingly, the circumstances under which an individual prosecutor makes a section 5K1.1 motion varies from office to office and among prosecutors in a single office. In contrast, if a judge grants or denies a departure for substantial assistance, the judge must do so in open court, on the record, and give reasons for his or her actions, which are then subject to judicial review.

In short, there is no good reason to handcuff the discretion of the district courts in this area. We should recognize the motion "requirement" for what it is: a procedural anomaly that the Sentencing Commission grafted onto an advisory policy statement intended to provide guidance for the courts. We should remand this case and allow the district court to consider Kelley's and Jiruska's claim that they should be sentenced below the guidelines range based on substantial assistance.

*I. The Enabling Legislation Does Not Require a Government Motion for a Substantial Assistance Downward Departure.*

No statute conditions a departure from the guidelines for substantial assistance on a government motion. The motion "requirement" is not contained within the enabling legislation, *see* 28 U.S.C. § 994(n), or any other congressional directive regarding the guidelines, nor is it suggested in the legislative history.

This omission is significant. Congress *has* enacted such a requirement for departures below statutory mandatory minimum sentences:

**Limited authority to impose a sentence below a statutory minimum.**—Upon motion of the Government, the court shall have the authority to impose a sentence

---

1. This court has provided limited review where bad faith or arbitrary action is alleged. *United States v. Smitherman,* 889 F.2d 189, 191 (8th Cir.1989), *cert. denied* 494 U.S. 1036, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990); *United States v.*

*Grant,* 886 F.2d 1513, 1514 (8th Cir.1989); *United States v. Justice,* 877 F.2d 664, 668–69 (8th Cir.), *cert. denied* 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989).

below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. 18 U.S.C. § 3553(e). Congress enacted this explicit motion requirement in section 1007 of the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207 (1986). In the very next section of that Act, however, Congress declined to impose any motion requirement with respect to a departure from the *guidelines* for substantial assistance:

> The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

28 U.S.C. § 994(n). The difference in language between the two statutes is clear. A court has the authority to depart below a *statutory mandatory minimum sentence* for substantial assistance only when the government makes a motion. If Congress had intended to impose a similar requirement on departures from the *guidelines* for substantial assistance, it certainly could have done so subject to constitutional limitations, but it did not.

In fact, the motion "requirement" in section 5K1.1, if viewed as mandatory, runs counter to congressional directive. Although section 994(n) requires the commission to "assure" that the guidelines "take into account a defendant's substantial assistance," a judge plainly cannot "assure" that a defendant's substantial assistance will be taken into account unless the prosecutor makes a motion, and the prosecutor may not always do that. The motion "requirement" in section 5K1.1 also runs counter to the directive of 18 U.S.C. § 3661

("[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

## II. The Motion "Requirement" Does Not Bind the Courts Because It Appears Only in an Advisory Policy Statement

Even though Congress has never mandated the motion "requirement" in section 5K1.1, the Department of Justice argues that courts are bound to follow it because the "requirement" is contained in a policy statement. This ignores the distinctions Congress made between guidelines and policy statements, and the history of section 5K1.1.

### A. Guidelines Versus Policy Statements, In General

When Congress directed the Sentencing Commission to formulate "guidelines," *see* 28 U.S.C. § 994(a)(1), it also told the courts to follow the guidelines. Congress stated that a sentencing court "shall," after considering the seven factors in 18 U.S.C. § 3553(a), impose a sentence "of the kind and within the range" of the guidelines, unless appropriate grounds for departure exist. *See* 18 U.S.C. § 3553(b). Congress also provided that an incorrect application of the guidelines was grounds for reversal. 18 U.S.C. § 3742(f)(1).

Congress did not, however, impose the same requirements with respect to policy statements. Although Congress directed the Commission to promulgate "general policy statements," 28 U.S.C. § 994(a)(2), it never stated that courts were bound to follow them. Instead, Congress provided that a sentencing court need only "consider" applicable policy statements when imposing sentence.[2] *See, e.g., United States*

---

2. For example, Congress directed the Commission to address a wide variety of questions regarding sentencing and application of the guidelines through policy statements. *See, e.g.,* 28 U.S.C. § 994(a)(2); 28 U.S.C. § 994(t) (sentence reduction); 28 U.S.C. § 994(v) (consecutive sentences). A sentencing court must "consider" the Commission's policy statements in many different situations. *See, e.g.,* 18 U.S.C. § 1031 (court must *consider* policy statements when determin-

*v. Fallin,* 946 F.2d 57, 58 (8th Cir.1991) (district court should have "considered" the policy statements in chapter seven when revoking defendant's supervised release); *United States v. Blackston,* 940 F.2d 877, 893 (3d Cir.1991) ("Consistent with the 'advisory' nature of the Chapter 7 policy statements, the district court, in sentencing a defendant whose supervised release has been revoked, is required only to *'consider'* any pertinent policy statement issued by the Sentencing Commission"). Not a single statute states that incorrect application of a policy statement is grounds for reversal. *Compare* 18 U.S.C. § 3742(f)(1). Not a single statute states that policy statements *must* be followed, nor does any guideline approved by Congress. In fact, a guideline Congress approved in 1987 states the contrary: according to section 1B1.7, guidelines commentary, which is the "legal equivalent of a policy statement,"

> may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines.... As with a policy statement, such commentary may provide guidance in assessing the reasonableness of any departure from the guidelines.

(emphasis added). In sum, Congress has said nothing to indicate that policy statements are anything other than advisory.

The legislative history cited by the court reinforces this point. The drafters of the Senate Report required only that policy statements be "taken into account" and "consulted." They did not require that policy statements be followed. *See ante* at 753-54. *Cf. Fallin,* 946 F.2d at 58 (failure to follow sentencing range set forth in policy statement harmless error).

It is plain that Congress has made a clear distinction between guidelines, which have the force of law, and policy statements, which are only advisory. There are good reasons for this distinction. Guidelines, unlike policy statements, must be submitted to Congress before taking effect. 28 U.S.C. § 994(p). The review pro-

cedure applies only to guidelines proper, not policy statements. Congress must have deemed it desirable to have a mix of controlling and advisory material under the guidelines system, giving the Commission and the courts the flexibility required in sentencing. *See, e.g.,* William W. Wilkins, Jr., *Plea Negotiations, Acceptance of Responsibility, Role of the Offender, and Departures: Policy Decisions in the Promulgation of Federal Sentencing Guidelines,* 23 Wake Forest L.Rev. 181, 187 (1988) ("In providing for general policy statements rather than guidelines for plea negotiations, Congress no doubt recognized the delicate balance to be struck between the ideals of sentencing reform and the practical realities of a system, however imperfect, that must dispose of thousands of criminal cases every year.").

The Sentencing Commission itself has recognized the distinction between policy statements and guidelines in its policy statements and commentary. Although the Commission's views are not binding on this court, the Commission has directly characterized its policy statements as "advisory":

> At the outset, [under 28 U.S.C. § 994(a)(3),] the Commission faced a choice between promulgating guidelines or issuing advisory policy statements for the revocation of probation and supervised release.... The Commission decided, for a variety of reasons, initially to issue policy statements. Not only was the policy statement option expressly authorized by statute, but this approach provided greater flexibility to both the Commission and the courts. Unlike guidelines, policy statements are not subject to the May 1 statutory deadline for submission to Congress, and the Commission believed that it would benefit from the additional time to consider complex issues relating to revocation guidelines provided by the policy statement option.
>
> Moreover, the Commission anticipates that, because of its greater flexibility, the policy statement option will provide

ing fine in fraud against United States); 18 U.S.C. § 3553(a)(5) (court must *consider* policy statements when determining sentence in gener-

al); 18 U.S.C. § 3582(a) (court must *consider* policy statements when determining appropriate prison facility for defendant).

better opportunities for evaluation by the courts and the Commission. This flexibility is important, given that supervised release as a method of post-incarceration supervision and transformation of probation from a suspension of sentence to a sentence in itself represent recent changes in federal sentencing practices. After an adequate period of evaluation, the Commission intends to promulgate revocation guidelines.

U.S.S.G. ch. 7, Pt. A(3)(a) (emphasis added). *See also Blackston,* 940 F.2d at 893 ("Whereas guidelines are binding on the courts, policy statements are merely advisory.") (discussing chapter seven policy statements). Likewise, the portion of the introduction that discusses departures is filled with permissive language:

> [Departures] **may** rest upon grounds referred to in Chapter Five, Part K (Departures) or on grounds not mentioned in the guidelines. While Chapter Five, Part K lists factors that the Commission believes **may** constitute grounds for departure, the list is not exhaustive. The Commission recognizes that there **may** be other grounds for departure that are not mentioned.

U.S.S.G. Ch. 1, Pt. A, intro., 4(b) (policy statement on departures) (emphasis added). Finally, the Commission has characterized commentary as analogous to legislative history. *See* U.S.S.G. § 1B1.7 (commentary). Legislative history, while often persuasive, does not bind a court, *see Wisconsin Public Intervenor v. Mortier,* — U.S. —, 111 S.Ct. 2476 115 L.Ed.2d 532, 546 n. 4 (1991), and neither should guidelines commentary or policy statements.

The Department of Justice also finds the distinction between policy statements and guidelines to be significant. The *Prosecutors Handbook on the Sentencing Guidelines* emphasizes that "GUIDELINES must be distinguished from POLICY STATEMENTS.... The guidelines, of course, are mandatory.... The policy statements, on the other hand, only provide general advisory statements which are not binding." United States Dep't of Justice, Criminal Division, *Prosecutors Handbook on Sentencing Guidelines and Other Provisions of the Sentencing Reform Act of 1984* at 6–7 (1987) [hereinafter *Prosecutors Handbook*]. At oral argument, counsel for the United States informed us that the Department of Justice had asked the Sentencing Commission to change section 5K1.1 from a policy statement to a guideline, a request consistent with the Department's recognition of the difference between policy statements and guidelines.

B. As Part of a Policy Statement, the Motion "Requirement" in Section 5K1.1 Is Not Binding.

Because section 5K1.1 is a general, advisory policy statement, it cannot be viewed as the last word on how and when a court should adjust a defendant's sentence for substantial assistance.[3] At most, the motion "requirement" merely "represents the Commission's recognition that the prosecution would be the party *most likely* to move a court for a downward departure for substantial assistance." Jonathan D. Lupkin, Note, *5K1.1 and Substantial Assistance Departure: The Illusory Carrot of the Federal Sentencing Guidelines,* 91 Colum.L.Rev. 1519, 1528 (1991) [hereinafter *Illusory Carrot*].[4] Treating section 5K1.1 as advisory is consistent with Congress' determination that the guidelines sentencing system required the flexibility given by a mix of binding directives and advisory statements.

Indeed, section 5K1.1's status as an advisory policy statement was intentional. The penultimate draft of the guidelines contained a substantial assistance departure provision similar to section 5K1.1, but

---

**3.** Indeed, the Commission itself maintains that the grounds for departures suggested in the guidelines are not exhaustive. *See* U.S.S.G. Ch. 1, Part A, Introduction 4(b).

**4.** This reading is also consistent with the plain language of section 5K1.1. The policy statement begins with the phrase "Upon motion of the Government," not the phrase *"Only* upon motion of the government." *United States v. Chotas,* 913 F.2d 897, 903 (11th Cir.1990) (Clark, J., dissenting in part).

with two important differences. First, the substantial assistance provision was not denominated a policy statement; and second, it contained no motion "requirement." Federal Sentencing Guidelines, Revised Draft, § C331, at 168 (1987). The guidelines that took effect in 1987 added the government motion "requirement" to the substantial assistance provision, but *only as part of a policy statement.* Had the Commission intended to promulgate section 5K1.1 as a binding guideline in all respects "it could have done so by merely classifying it as such. Instead, it chose to label the provision as a policy statement thereby granting the courts both substantive *and* procedural flexibility." *Illusory Carrot, supra,* at 1532 (emphasis in original).

Although the court acknowledges that policy statements differ from guidelines, it does not fully embrace the idea that policy statements are advisory. The court apparently fears that giving district courts the discretion to depart downward for substantial assistance without a government motion will bring chaos to the guidelines because district courts "could *reject* a legitimate policy statement merely because they disagree with it." *See ante* at 756 (emphasis added). The court seems to imply that district courts have some duty to accept "legitimate" policy statements, but this is a requirement Congress never imposed. Congress merely mandated that courts "consider" policy statements when imposing sentence. *See* 18 U.S.C. § 3553(a)(5).

There is no reason to think that district courts will disobey this congressional directive, and to suggest otherwise demeans the integrity of the district courts.[5]

Moreover, the court's specific example of how chaos could occur does not withstand scrutiny. The court claims that if it recognized the motion "requirement" in section 5K1.1 as nonbinding, many policy statements that are the only word on a "significant number of crucial issues," such as those in Ch. 5, Pt. H of the guidelines, would be invalidated. *See ante* at 756. This, however, ignores the fact that every policy statement in Ch. 5, Pt. H is *substantive* guidance promulgated pursuant to Congress' direction, while the motion "requirement" is a procedural condition Congress never required.

For example, four of the ten policy statements in Ch. 5, Pt. H directly track congressional directives.[6] Similarly, the six other substantive policy statements in section 5H were promulgated pursuant to congressional mandate, with Congress *giving the Commission the discretion* to decide whether factors such as age, physical condition, and criminal history should be relevant to the sentence imposed.[7] Although we should not decide here how much deference courts should give to such substantive policy statements, as we are not faced with a challenge to any of them, a substantive policy statement that properly implements

---

**5.** A recent case suggests that this court will review a district court's failure to consider applicable policy statements. *See Fallin,* 946 F.2d at 58.

**6.** *Compare* 28 U.S.C. § 994(e) (Commission shall assure that guidelines and policy statements reflect the general inappropriateness of considering education, vocational skills, employment record, family ties and responsibilities, and community ties) *with* U.S.S.G. § 5H1.2 (education and vocational skills not ordinarily relevant in determining if a sentence should be outside guidelines range); § 5H1.5 (employment record not ordinarily relevant); § 5H1.6 (family ties and community ties not ordinarily relevant); *compare also* 28 U.S.C. § 994(d) (Commission shall ensure that guidelines and policy statements are entirely neutral as to an offender's race, sex, national origin, creed, and socioeconomic status) *with* U.S.S.G. § 5H1.10

(race, sex, national origin, creed, religion, and socioeconomic status not relevant in determining a sentence).

**7.** *Compare* 28 U.S.C. § 994(d) (Commission shall consider whether age, education, vocational skills, mental and emotional condition, physical condition, employment record, family ties, community ties, role in the offense, criminal history, and criminal livelihood are relevant to an appropriate sentence) *with* U.S.S.G. § 5H1.1 (age not ordinarily relevant except for elderly and infirm offenders); § 5H1.3 (mental and emotional conditions not ordinarily relevant except as to certain departures); § 5H1.4 (physical condition not ordinarily relevant except for offenders with extraordinary impairments); 5H1.7 (role in the offense is relevant); 5H1.8 (criminal history is relevant); § 5H1.9 (criminal livelihood is relevant).

a congressional directive certainly is entitled to more deference than a policy statement that contains a gratuitous procedural requirement contrary to congressional intent.

Moreover, if the Sentencing Commission and Congress wish to make a policy statement such as section 5K1.1 binding, they can do so. The Sentencing Commission always has the opportunity to turn a policy statement or a commentary into a guideline. Since the initial set of guidelines took effect, the Commission has proposed, and Congress has approved, numerous guideline amendments. Several of these have involved elevating policy statements to guideline status and changing guidelines into policy statements. No such change has been made to section 5K1.1, which to date remains a policy statement, designed to be advisory only and to provide flexibility to the courts.

Finally, the court's concern about chaos and a lack of uniformity is far too narrow. The court focuses on judicial decision making as a cause of sentencing disparity, but ignores the fact that judicial discretion in sentencing is tightly circumscribed and comes only after many other players in the criminal justice system have exercised their discretion. As one supporter of a sentencing guidelines system has observed:

> Even when the quality of justice administered by courts is at its best, the legal system produces extreme *injustice* whenever either the police or the prosecutors administer discriminatory justice that remains uncorrected.

> . . . we have to open our eyes to the reality that justice to individual parties is administered more outside courts than in them, and we have to penetrate the unpleasant areas of discretionary determinations by police and prosecutors and other administrators, where huge concentrations of injustice invite drastic reforms.

Kenneth Culp Davis, *Administrative Law of the Eighties*, § 9:1–3, at 278, 280 (Supp. 1989) (emphasis in original).

The biggest cause of sentencing disparity has always been the prosecutor's discretion to decide whom to charge, what to charge, and when to charge. By giving the prosecutor even more power to determine the ultimate sentence, the guidelines increase that kind of sentencing disparity. A prosecutor's power to make or withhold a section 5K1.1 motion is but one example of this. *See, e.g., United States v. Hammer*, 940 F.2d 1141, 1142–47 (8th Cir.1991) (Heaney, J., concurring). Because individual prosecutors decide whether to make a section 5K1.1 motion, equally deserving defendants can receive different sentences based only on differences in the attitudes of prosecutors. This perverts the intent of the guidelines, which is to ensure that similarly situated defendants receive similar sentences. What makes matters worse is that these virtually unreviewable decisions are made in private with no standards to guide them.[8] *See United States v. Harrington*, 947 F.2d 956 (D.C.Cir.1991) (Edwards, J., concurring); *Prosecutors Handbook, supra*, at 52 (determination of whether a defendant has rendered substantial assistance "will necessarily be somewhat subjective and will vary from case to case.").

I recognize that many courts of appeals have ruled that the motion "requirement" is a necessary step for a substantial assistance departure. *See ante* at 751. In doing so, however, none of these courts has seriously considered the question before this court. If presented with the issue before us, some might reconsider their holdings. The Third Circuit recently has recognized that policy statements are advisory, *see Blackston*, 940 F.2d at 893, and the Seventh Circuit has suggested twice that the policy statement issue in section 5K1.1 is an open question in that court. *See United States v. Poff*, 926 F.2d 588, 591 (7th Cir.) (en banc), *cert. denied* —— U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991); *United States v. Bayles*, 923 F.2d 70, 71 (7th Cir.

---

**8.** Although I am very concerned about the constitutional problems raised by the motion "requirement," I do not discuss them in this case because, as the court states, the constitutional issues have not been raised in this appeal.

**768**

1991) ("it may be that by writing a policy statement rather than a guideline the Commission has signalled that it does not think its treatment [of substantial assistance] definitive.").

### Conclusion

When one views the enabling statutes and the guidelines as a whole, it becomes plain that the motion "requirement" in section 5K1.1 is not a requirement at all, but a procedural anomaly created by the Commission as part of an advisory policy statement. Nonetheless, the court has chosen to view the motion "requirement" as binding in most cases. Lurking in the background of the court's decision are two concerns: that chaos will result and that law enforcement will be hampered if section 5K1.1 is treated as a nonbinding policy statement.

Neither of these fears is justified. As explained above, most policy statements are substantive, and many have been issued pursuant to specific congressional directives. Courts cannot simply ignore such signposts even if they disagree with them, because Congress requires them to be "considered."

As for law enforcement, there is no reason to think that it will be hampered by treating the motion "requirement" as nonbinding. Defendants will continue to have a strong incentive to cooperate fully with the government: the government's view as to whether a defendant provided substantial assistance will always be extremely influential with a court, and a defendant's motion to depart downward based on cooperation will rarely be granted in the face of government opposition.

Nor is there any reason to think that prosecutors will have to unmask informants or jeopardize ongoing investigations when opposing a defendant's motion under section 5K1.1. Proceedings can be conducted *in camera* if the need arises. If a defendant claims he has provided substantial assistance to the government, the defendant would undoubtedly want to testify about the nature and extent of his assistance and the government official to whom

he provided the information. That official could rebut the defendant's claim by explaining how the assistance, if provided, was in fact insubstantial.

I acknowledge that there is a cost to allowing defendants to ask for a departure based on substantial assistance: some sentencing hearings will take more time. The cost of treating the motion "requirement" as binding, however, is far higher. By placing a person's liberty in the hands of a prosecutor without any sort of meaningful review, the motion "requirement" leads to the abuses of power our Constitution is designed to prevent.