**UNITED STATES of America,**
**Appellee,**

v.

**James Craig MARTIN, Appellant.**

Nos. 74–1674, 74–1675.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1974.

Decided Feb. 18, 1975.

---

John P. Mazzitelli, Minneapolis, Minn., for appellant.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and SCHATZ, District Judge.*

SCHATZ, District Judge.

James Craig Martin was found guilty by a jury in the United States District Court for the District of Minnesota on three counts from two separate indictments consolidated for trial. Count I alleged a conspiracy between Martin, Garth McRae, Peter Winther, and other named persons not made defendants to distribute controlled substances (tetrahydro-cannabinols and phencyclidine), in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count II alleged that on or about January 18, 1973, the defendant Martin intentionally distributed approximately thirty thousand tablets of phencyclidine, in violation of 21 U.S.C. § 841(a)(1). Count III alleged that on or about January 21, 1973, the defendant Martin intentionally distributed approximately twenty thousand tablets of phencyclidine, in violation of 21 U.S.C. § 841(a)(1).

On appeal, the defendant Martin alleges the following errors:

1) That certain incriminating extra-judicial statements were admitted at the trial even though these statements were given by the defendant without the benefit of warnings concerning his right to counsel and privilege against self-incrimination as required by Miranda v. Arizona, 384 U.S. 436, 84 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2) That the same statements were admitted at the defendant's trial even though they were the product of a search of the defendant's house conducted pursuant to an invalid search warrant.

3) That a prejudicial comment was made by the trial judge in his instructions to the jury concerning the defend-

* The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

ant's failure to testify or produce evidence in his behalf.

The evidence introduced at the defendant's trial indicated that Garth McRae was the source and central figure in a large-scale phencyclidine distribution operation in Minneapolis, Minnesota, from early 1972 through mid-1973. McRae arranged for phencyclidine tablets to be brought into Minneapolis from Detroit, Michigan, which tablets he then sold to certain first-level dealers, among whom was the defendant Martin. These dealers in turn sold the tablets in smaller quantities to other persons, who either consumed them or sold them once again.

Listed in Count I as unindicted co-conspirators were Peter Hudson, Thomas Sinnott, Jerry Flategraff, and Mark Savage. On January 18, 1973, McRae sent Sinnott to Detroit to pick up phencyclidine. Sinnott returned with forty-five to sixty thousand phencyclidine tablets, of which McRae delivered approximately thirty thousand to the defendant Martin. On the same day, January 18, 1973, defendant delivered these tablets to Savage on credit. On January 19, 1973, Savage sold different quantities of pills to various persons, including a federal agent, and remitted a portion of the proceeds to the defendant in payment for the pills advanced to him. On January 21, 1973, Hudson bought approximately fifteen thousand phencyclidine tablets from the defendant at the defendant's house, for which he paid defendant in cash. Hudson, Savage, and Flategraff then arranged a sale of these and other pills to an undercover federal agent. This attempted sale resulted in the arrest of Hudson, Savage, and Flategraff on January 21, 1973. On the following day, January 22, 1973, federal agents obtained a search warrant for the home of the defendant, but upon execution of the warrant they found no drugs.

I.

The first error asserted by the defendant concerns statements made by him to the federal agents who searched his house on January 22, 1973. Pursuant to the search warrant, several of these agents, some with guns drawn, entered the defendant's house. The agents found the defendant and two ladies present and ordered them to remain in the living room. The agents then searched the house and found nothing. No arrests were made or attempted. After the agents completed the search and were about to leave, the agent in charge told the defendant that apparently they were a day or so late in making their search. The defendant replied in agreement. This agent then said that the next time the defendant received any drugs, the agents would arrive a little quicker. The defendant then stated that there would not be a second time.[1] Prior to trial the defendant moved to suppress these statements on the ground that they were given without the benefit of the *Miranda* warnings. The trial judge overruled the motion and the statements were introduced at trial, which introduction the defendant now asserts was error. We conclude that the statements were clearly admissible.

The warnings specified in Miranda v. Arizona, *supra,* are required prior to custodial interrogation, a phrase defined by the Supreme Court in that case to be:

[Q]uestioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

384 U.S. at 444, 86 S.Ct. at 1612.

■ Although the United States argues that the defendant was not in custody at the time the statements were given, it is unnecessary for us to decide

---

1. The testimony given by an agent who overheard the conversation is as follows:

Group Superviser Walsh said to Mr. Martin, 'It looks like we were a day late' and Mr. Martin stated that we definitely were. Mr. Walsh stated that if Mr. Martin receives any other drugs in the future, that we will be talking to him and Mr. Martin stated, 'There won't be a second time.'

this point. Assuming there was custody, it is clear that there was no interrogation. The initial statement in this short conversation was, of course, made by the federal agent in charge, but it was not in any sense a question and it called for no response. The same is true of the second remark by the agent which followed the volunteered statement by the defendant. As stated by the Court of Appeals for the Fifth Circuit:

> Voluntary statements of any kind, not in response to custodial interrogation, are not barred by the Fifth Amendment, nor has their admissibility been affected by the *Miranda* decision or its progeny.
>
> In several cases voluntary self-incriminating statements made by persons under arrest have been ruled admissible, notwithstanding the fact that *Miranda* warnings had not been given at the time the statements were made. See United States v. Welsh, 5 Cir., 1969, 417 F.2d 361; United States v. Bourassa, 10 Cir., 1969, 411 F.2d 69, cert. denied 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969); United States v. Godfrey, 10 Cir., 1969, 409 F.2d 1338; Anderson v. United States, 10 Cir., 1968, 399 F.2d 753.

United States v. Sanchez, 449 F.2d 204, 209 (5th Cir. 1971). *See also* United States v. Hopkins, 486 F.2d 360 (9th Cir. 1973).

## II.

The defendant also argues that these statements were the fruit of an illegal search in that the search warrant authorizing the agents to be in the defendant's house, and thus in a position to hear the statements, was based upon an insufficient showing of probable cause. The search warrant was issued on the basis of an affidavit signed by a government agent in which the agent related information given to him by a named informant, Jerry Flategraff. Specifically, the defendant argues that the information related by Flategraff to the affiant was too old to constitute probable cause to believe that drugs were in the defendant's house on the date the warrant was issued.

The affidavit stated that the agent had made the following purchases of phencyclidine from Flategraff: 100 tablets on December 5, 1972; 2,000 tablets also on December 5, 1972; and 10,000 tablets on January 19, 1973. The agent also stated that Flategraff was arrested on January 21, 1973, with a large quantity of phencyclidine ready for sale to the agent; that on January 22, 1973, Flategraff stated to the agent that the tablets the agent had bought came from a person whose physical description and address matched those of the defendant; that papers seized from other persons arrested in the same investigation indicated that the defendant was also their source of drugs; that during one of the agent's conversations with Flategraff (for which no date was given), Flategraff stated that he had seen approximately sixty thousand phencyclidine tablets at the defendant's house. In his motion to suppress, and here on appeal, the defendant argues that since the affidavit contained no recent date for the observation of the drugs by Flategraff at the defendant's house, the information furnished the magistrate was too stale to constitute probable cause. We do not agree.

Concerning the time element involved in the affidavit supporting a search warrant, the Court of Appeals for the Tenth Circuit has stated most appropriately:

> Initially, it should be noted that the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. Together with the element of time we must consider the nature of the unlawful activity. Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the

passage of time becomes less significant.

United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972). The information related by Flategraff showed a course of conduct covering six to seven weeks. Although Flategraff did not give the date for his observation of the sixty thousand tablets, the increasing size of the sales by Flategraff to the agent and the fact that the largest two sales had been made three days and one day prior to the affidavit did indeed give the magistrate probable cause to believe there were drugs at the house of Flategraff's source.

### III.

The defendant also argues that the underscored portion of the following instruction given by the trial judge constituted an improper comment on the defendant's failure to take the stand or offer evidence in his behalf:

The defendant did not take the witness stand and testify in his own behalf in this case. In doing so, he was acting perfectly within his Constitutional rights. The Constitution of the United States gives him the right to remain silent in the trial of a case *and to say to the Government, in effect, "Prove me guilty if you can."* The Government has to prove him guilty beyond a reasonable doubt before he can be convicted, and in reaching the decision as to whether the Government has so proved him guilty, you cannot consider the fact that he has failed to take the witness stand and testify. That is a matter that cannot be used against him in any way in this case.

(Emphasis supplied.)

Following the charge, and out of the presence of the jury, counsel for the defendant made the following objection:

The defendant moves and the record should reflect that he objects to the form of the instructions in that the defendant had requested the instructions in the "Jury Instructions Guide," Devitt and Blackmar, 11.01, 11.02, 11.-03, 11.10, 12.02, 12.04, 12.05, 12.06, 12.-10, 12.16, 12.17.

 Clearly, this broad objection did not preserve for appeal any issue concerning the instructions since it failed to comport with the language of Rule 30, Fed.R.Crim.P., which states in part:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.*

(Emphasis supplied.) *See* United States v. Sargis, 460 F.2d 1329 (8th Cir. 1972). As stated in *Sargis,* under Rule 30 error may not be assigned to any portion of the trial court's instructions unless the complaining party states distinctly the matter to which he objects and the grounds of the objection. The purpose and reason for this rule is to give the trial court fair opportunity to correct any mistakes in its proposed jury instructions. Objections which do not effectuate this end are precluded from appellate review. Further, while it is our opinion that the offending phrase of the instruction, *supra,* is not necessary and serves no purpose either by way of explanation or as an example, the instruction taken as a whole does not constitute plain error under Rule 52(b) and was not prejudicial.

Accordingly, we affirm.