**UNITED STATES of America, Appellant,**

v.

**John MARSHALL, Appellee.**

No. 92–3398.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1993.

Decided July 19, 1993.

Michael P. Norris, Asst. U.S. Atty., Omaha, NE, argued, for appellant.

No argument was presented on behalf of the appellee.

Before McMILLIAN and BEAM, Circuit Judges, and SACHS,* Senior District Judge.

SACHS, Senior District Judge.

The Government appeals from the district court's sua sponte departure downward in the sentencing of this drug case involving a large number of marijuana plants. Under a plea agreement, defendant pled guilty to the manufacture and possession with intent to manufacture in excess of 100 marijuana plants. In return for the guilty plea the United States agreed to make a non-binding recommendation at sentencing that the court impose its sentence at the low end of the applicable Sentencing Guideline range. Under the presentence report the imprisonment range was 97 to 121 months, calculated on a conversion ratio of one plant to one kilogram. On its own motion the court departed downward and imposed a 66 month sentence.

The district court at sentencing observed that "the determination that he should be charged with 416 kilograms of marijuana simply just doesn't make sense to me." In following the Guidelines to determine the Total Offense Level, and thereafter departing downward, the judge added that he viewed the classification as "arbitrary and capricious" when the conversion ratio is one

---

* The Honorable Howard F. Sachs, Senior United States District Judge for the Western District of     Missouri, sitting by designation.

kilogram to a plant, for 50 or more plants, but only 100 grams per plant for 49 or fewer plants.

We are compelled to reverse for resentencing, although we acknowledge skepticism about the rationale used by the Sentencing Commission. Disagreement with the Guidelines does not justify a departure. *United States v. Muzika,* 986 F.2d 1050, 1054 (7th Cir.1993); *United States v. Jones,* 905 F.2d 867, 870 (5th Cir.1990); *United States v. Lopez,* 875 F.2d 1124, 1126 (5th Cir.1989). An impression that an arbitrary and capricious factor has become embedded in the Guidelines may well, however, justify further consideration, on remand, of the constitutional validity of the Guideline provision, irrespective of the widespread (if occasionally grudging) judicial acceptance of the marijuana plant conversion ratio.[1]

If, on remand and further study, defendant wishes to challenge the marijuana plant conversion ratio as arbitrary and capricious, and violative of substantive due process, an orderly presentation should be made, after adequate notice (unless the matter can be submitted on motions and briefs). Without legal challenge from or adopted by defendant, however, the district court is obligated to follow the Guidelines.

Because our suggestion that further challenge may be fruitful could be baffling, in light of the widespread validation of the conversion ratio, some further indication of what troubles us may be appropriate, as well as some indication of why we believe the issue may remain open in this circuit.

To begin with the final point, it will be acknowledged that shortly before the sentencing below there was a ruling in this circuit that it was not irrational to equate one marijuana plant with one kilogram of marketable marijuana. *United States v. Smith,* 961 F.2d 1389, 1390 (8th Cir.1992). The rationale given was that Congress intended "heightened culpability of growers" and "may have equated one plant with one kilogram based on culpability not weight." A member of this panel joined that ruling on the issue, which has been declared "foreclosed" in this circuit. *United States v. Johnston,* 973 F.2d 611, 613 (8th Cir.1992). It will be observed, however, that the law in this circuit simply addresses the rationality of heightened culpability, not the surprising degree of disparity.[2]

Turning to the source of the marijuana plant conversion ratio, it appears the Sentencing Commission adopted a ratio derived from Congressional enactment of a conversion system usable in establishing minimum sentence qualifications. Derivation from 21 U.S.C. § 841(b)(1)(A), (B) and (D) is noted in the Sentencing Commission's "Background" statement on page 89 of the 1991 Guidelines Manual (applicable in this case). Senator Biden explained that the Congressional action was designed to curtail "unnecessary

---

1. As will be further indicated, we are inclined to believe that there may be an acceptable rationale for "going light" on minor offenders, with 49 or fewer plants. See, e.g., *United States v. Webb,* 945 F.2d 967 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1228, 117 L.Ed.2d 463 (1992). We do not question and are in no position to question rulings in this circuit and elsewhere that would justify a more severe penalty for growers than for possessors of the finished product. Where we do suggest there may be room for further development of the issues would relate to (1) what rationale, if any, there is for penalizing growers on a ten-to-one ratio, if that is occurring, and (2) whether there is reason to believe that Congress and the Sentencing Commission actually intended such disparity in punishment, as between growers and possessors. It seems quite possible, from the limited information we have, that "arbitrary and capricious" punishment is occurring, probably unintended by the original enacting parties. We believe there is

some novelty in these points, which are not discussed in what may be the most thorough appellate survey of the conversion ratio controversy. *United States v. Lee,* 957 F.2d 778, 783–85 (10th Cir.1992).

2. We acknowledge, however, that this circuit's ruling sustaining the even more extraordinary disparity in punishment between possession of cocaine powder and cocaine base, on a cruel and unusual punishment challenge, may tend to discourage further challenge of the marijuana plant conversion ratio. *See United States v. Buckner,* 894 F.2d 975, 980–81 (8th Cir.1990). With so much at stake, however, in this and other cases, we are reluctant to say that full exploration of the issues is unwarranted, either in this case or in connection with the crack cocaine punishments, which continue to perplex many sentencing judges. We do not invite mere repetition of prior rejected arguments, without new facts or legal analysis.

debate" between prosecutors and defendants, and stated, without explanation, that "[T]he bill uses 1,000 plants as the equivalent of 1,000 kilograms." 134 Cong.Rec. S17368 (daily ed. Nov. 10, 1988).

There is no suggestion evident to us that it was intended to punish growers more severely than possessors of the finished product. As recently as May of 1991, a district judge was given to understand that "one marijuana plant can reasonably be expected to produce a kilogram of a mixture or substance containing marijuana." *United States v. Lewis*, 762 F.Supp. 1314, 1316 (E.D.Tenn.), *aff'd. without opinion*, 951 F.2d 350 (6th Cir.1991).[3] On the other hand, we find a Drug Enforcement Administration estimate of an average plant yield of 400 grams, and a "possible" yield of 1000 grams. 54 Fed.Reg. 9121, 9136 (1989) (Sentencing Commission Notice).

On remand it may be developed that Congress did not have the DEA information when it amended the statute in question. But if Congress did in fact have the 400 gram average yield estimate before it, it may be presumed that Congress did intend to punish growers more severely, as the courts have surmised, but only on a ratio of about 2½ to one, not far from the "treble damage" type of punishment that is frequently used. Our limited examination of the issues reveals nothing to suggest that there was a Congressional intent to adopt a harsh ten-to-one punishment ratio, applicable to marijuana plant growers, as the Sentencing Commission seems to have assumed.[4]

If it develops that the only available legislative history is the one-sentence statement of a conclusion by Senator Biden, one might suppose that the Senator meant, and his colleagues understood, that there was, for practical purposes, a rough equivalence between a marijuana plant and a kilogram of finished marijuana. Somewhat less likely would be an understanding by the Senator that the ratio is unfavorable to growers, but within sufficiently conventional bounds so

that he and his colleagues would not think the matter controversial enough to mention. Most unlikely, however, is that a ten-to-one ratio, as used by the Sentencing Commission, was being knowledgeably but silently adopted by Congress as an appropriate standard for purposes of punishment.

In offering the above observations we of course do not intend to prejudge any issue, legal or factual, that may be developed before the district court on remand.

The judgment is reversed for reconsideration of the sentencing decision.

---

**3.** The current published view of the Sentencing Commission is that "the average yield from a mature marihuana plant equals 100 grams of marihuana." 1991 Guidelines Manual, 89.

**4.** Several years of inaction arguably suggests Congressional and Sentencing Commission satisfaction with the current situation, but we do not discount the force of inertia in governmental affairs.