**UNITED STATES of America, Appellant/Cross–Appellee,**

v.

**Robert A. HAVERSAT, Appellee/Cross–Appellant.**

**UNITED STATES of America, Appellant/Cross–Appellee,**

v.

**David B. GIBSON, Appellee/Cross–Appellant.**

Nos. 93–2090, 93–2203, 93–2091 and 93–2201.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1993.

Decided April 22, 1994.

John J. Powers, Washington, DC, argued (Joseph H. Widmar, John J. Powers, III and Marion L. Jetton, P. Terry Lubeck, Robert W. Wilder, Sanford M. Adler and Gregory E. Neppl, appear on the brief), for appellant/cross-appellee U.S.

Paul R. Grand of New York City, argued (Paul R. Grand, Diana D. Parker and Alan P. Williamson, appear on the brief), for appellee/cross-appellant Haversat.

Larry H. Krantz of New York City, argued (Jeffrey C. Slade and Larry H. Krantz, appear on the brief), for appellee/cross-appellant Gibson.

Before BOWMAN, Circuit Judge, JOHN R. GIBSON,* Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Robert A. Haversat and David B. Gibson each pleaded nolo contendere to a single count of conspiring to fix prices in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The district court departed downward at sentencing and sentenced Haversat and Gibson each to pay a $250,000 fine. The government appeals the sentences. Haversat and Gibson cross appeal the district court's findings denying them an acceptance of responsibility adjustment and determining the volume of commerce affected by the price-fixing scheme. We affirm the district court's findings on acceptance of responsibility and the volume of commerce affected, but we reverse the district court's downward departures, vacate the sentences imposed, and remand for resentencing.

I.

From 1977 to 1986, Robert A. Haversat served as president of McKinney Products Company (McKinney). In May of 1986, Haversat represented McKinney at two secret meetings with McKinney competitors in the

---

* The Honorable John R. Gibson was an active judge of this court at the time this case was submitted and took senior status on January 1, 1994.

architectural hinge industry to discuss and implement a price-fixing scheme designed to boost the price of and profits from architectural hinges sold in the United States. Representatives of McKinney, The Stanley Works (Stanley), the Hager Hinge Company (Hager), and Lawrence Brothers (Lawrence Bros.), attended the meeting and joined the price-fixing scheme. These four firms controlled the vast majority of the architectural hinge market in the United States at the time of the meetings.

The vice president of sales for Stanley at that time, John Hollfelder, organized the first meeting and made the first proposal for a price-fixing scheme. Hollfelder proposed a 20 to 35 percent reduction in the published price for the hinges accompanied by a reduction of and limitation on the discounts given to customers. Some manufacturers had offered discounts previously as high as 70 percent and the proposal was to reduce the discounts to no more than 40 percent. At the second meeting, the representatives of each company again discussed the scheme. Haversat stated that David B. Gibson, then McKinney's marketing manager, was aware of the scheme. The parties decided that they would implement the scheme and Stanley would publish a new price book with the agreed-on prices and the other competitors would follow with similar price books.

In September of 1986, David Gibson took over as president of McKinney. Gibson attended two more meetings, in February and August of 1987, to discuss the progress of the price-fixing scheme. The price-fixing conspiracy continued well into 1988. Each of the participating companies made millions of dollars during the operation of the conspiracy.

The conspiracy came to the attention of the United States Department of Justice Antitrust Division, which initiated an investigation. The investigation resulted in a one-count indictment being filed May 22, 1990, charging Haversat and Gibson, as well as three other individuals and four corporations (including McKinney), with conspiring to fix prices in violation of 15 U.S.C. § 1.

Haversat and Gibson pleaded nolo contendere to the charges on August 20, 1992. They were sentenced March 31—April 1, 1993. Both defendants had a base-offense level of 9 under U.S.S.G. § 2R1.1(a) (Oct. 1987).[1] The district court added a two-level increase, to level 11, after finding pursuant to U.S.S.G. § 2R1.1(b)(2) that the volume of commerce affected by the conspiracy exceeded $15 million. The district court also found that neither defendant was entitled to an acceptance of responsibility reduction under U.S.S.G. § 3E1.1.

The district court, however, pursuant to U.S.S.G. § 5K2.0, departed below the Guideline range for both Haversat and Gibson and sentenced them both at the equivalent of an offense level 6. The district court did not impose any incarceration or probation upon either defendant and imposed a fine of $250,-000 on each of them. Without the downward departure, these defendants would have been sentenced at an offense level of 11 and faced 8 to 14 months of imprisonment and a fine of $800,000 to $2,000,000. *See* U.S.S.G. § 2R1.1(c) (1987). The government appeals the sentences of both Haversat and Gibson, arguing that the downward departures were not warranted in this case. Haversat and Gibson cross appeal, arguing that they were entitled to acceptance of responsibility and that the district court erred in calculating the volume of commerce involved.

## II.

"The only circumstance in which the district court can disregard the mechanical dictates of the Guidelines is when it finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission.'" *Burns v. United States*, 501 U.S. 129, 131–35, 111 S.Ct. 2182, 2184–85, 115 L.Ed.2d 123 (1991) (quoting 18 U.S.C. § 3553(b)). The Guidelines explicitly provide for the "departures" authorized by 18 U.S.C. § 3553(b) in U.S.S.G. § 5K2.0. We

---

1. There is no dispute that the district court used the 1987 version of the Sentencing Guidelines Manual in imposing the sentence. Under the 1987 Guidelines, the base-offense level was 9. In 1989, the base-offense level was raised to 10.

use a three-step test to determine if the departure is appropriate under § 3553(b):

> First, as a question of law, we determine 'whether the circumstances the district court relied on for departure are sufficiently unusual in kind or degree to warrant departure.' ... Second, as a question of fact, we determine 'whether the circumstances justifying departure actually exist.' ... Finally, with deference to the district court, we review the reasonableness of the degree of departure under an abuse of discretion standard.

*United States v. Sweet,* 985 F.2d 443, 445 (8th Cir.1993) (quoting *United States v. Lara–Banda,* 972 F.2d 958, 960 (8th Cir. 1992)); *see also Williams v. United States,* —— U.S. —— – ——, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992) (under 18 U.S.C. § 3742(f) court of appeals must remand for resentencing "if the sentence was imposed as a result of an incorrect application of the Guidelines or if the sentence is an unreasonable departure from the applicable guideline range.").

### III.

#### A. *Departure in Haversat's Sentencing*

The district court referred to the following factors in support of its decision to depart downward in Haversat's case: [2] Haversat's assistance to the court; his good character and exemplary life; the coercive economic influence of Stanley; and the fact that he was a relative newcomer who "swam with the crowd" and lacked the courage to object to the scheme. The government contends that none of the factors enumerated by the district court support the departure. Haversat argues on appeal that two of those factors support the departure: his substantial assistance to the courts and his exceptional character.[3]

#### (1) *Assistance to the Court*

The district court found that a downward departure was appropriate because Haversat's actions assisted the court in administering justice and saving court resources. (Defs.' Jt.App. at 190–91.) Haversat contends his nolo plea and his assistance in settling the related civil antitrust lawsuit are the particular acts that assisted the court. The government argues that these acts are not, as a matter of law, a basis for a downward departure under section 5K2.0. Haversat argues that this assistance to the courts presents a sufficient basis for the departure. *See United States v. Garcia,* 926 F.2d 125, 127–28 (2d Cir.1991) (defendant's substantial assistance to the courts is grounds for departure).

■■■ We have never authorized a downward departure on the basis of a defendant's assistance to the courts.[4] We have held, however, that district courts lack the authority to depart downward under U.S.S.G. § 5K2.0 on the basis that the defendant's early guilty plea conserved judicial resources. *United States v. Garlich,* 951 F.2d 161 (8th Cir.1991). A guilty plea before trial is a

---

**2.** The district court stated its reasons for departing downward on the record at the sentencing hearing and in the final judgment entered against the two defendants. There is some variance in the reasons provided on the record and in the written judgment for each defendant. Haversat argues that where there is a variance between the statement of reasons, the statements at the sentencing hearing prevail and the reviewing court should disregard the reasons in the written record. We look to both the written record and the hearing record if the reasons provided are not irreconcilable. Here, the reasons given are not irreconcilable. The written reasons appear to simply supplement the oral ruling.

**3.** Haversat also argues that the government waived some of its objections to the departure. While he is correct that the law requires the government to specifically object to the downward departure, we find that the government has done so in this case.

**4.** Haversat argues that we previously noted our approval of 5K2.0 departures on the basis of assistance to the courts in *United States v. Kelley,* 956 F.2d 748 (8th Cir.1992) (en banc). We disagree. In *Kelley,* we only noted the existence of cases embracing the theory, but then specifically found that the question was not presented in Kelley's case. *Kelley,* 956 F.2d at 752 n. 5. We did not endorse departures under U.S.S.G. § 5K2.0 based on assistance to the courts. Haversat also relies on Judge Beam's dissent in *Kelley,* which contends that a departure is available on a *Garcia*-type theory without a government motion. *Id.* at 757–59 (Beam, J., dissenting). That view, however, did not garner a majority and consequently is not the law of this circuit.

factor to be considered only in the acceptance of responsibility determination under U.S.S.G. § 3E1.1. *Id.* at 163–64.[5]

■ The reasoning of *Garlich* applies with equal force in this case. Haversat's argument that his early nolo plea should be a basis for a downward departure because it assisted the court is virtually identical to Garlich's argument that downward departure was appropriate because his early guilty plea saved judicial resources. The nolo plea then is a factor to be considered (if at all) only in the determination of acceptance of responsibility. Similarly, Haversat's assistance in settling a related civil lawsuit is also more properly treated as a factor to be considered in relation to acceptance of responsibility. Helping to settle a related civil suit is somewhat similar to providing "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense," which is an appropriate consideration for determining acceptance of responsibility. U.S.S.G. § 3E1.1, comment. (n. 1(e)).

Moreover, substantial assistance to the administration of justice is also counted, to some degree, under U.S.S.G. § 5K1.1, which allows a sentencing court to depart downward "[u]pon motion of the government stating that the defendant has provided substantial assistance" to the prosecution. "It is difficult to imagine any material assistance to the prosecution that does not aid the courts in the administration of justice. Nor can assistance to the courts fail to aid the prosecution in some measure." *United States v. Shrewsberry*, 980 F.2d 1296, 1298 (9th Cir. 1992) (specifically declining to follow *Garcia*).

We conclude that a defendant's early nolo plea and a defendant's assistance in settling a related civil suit do not provide a basis for downward departure under section 5K2.0. The district court erred in relying on these factors in imposing Haversat's sentence.

*(2) Good Character*

■ The district court also found Haversat's good character supported a downward departure under section 5K2.0. (Defs.' Jt. App. at 191; Appellant's App. at 8.) Haversat argues that his outstanding charitable and community service work exhibited his exceptional character to the district court and supported the departure. Haversat contends that we have authorized downward departures under § 5K2.0 on the basis of a defendant's good character. *United States v. David Big Crow*, 898 F.2d 1326, 1330–32 (8th Cir.1990). We disagree.

We did not authorize a general "good character" departure in *Big Crow*. We simply found that the fact that Big Crow had consistently made efforts to overcome the extreme hardship of life on the reservation supported a departure. *Id.* at 1331–32. We have characterized the *Big Crow* analysis as inapplicable where the defendant failed to show that he "struggled in a difficult environment like the defendant in [*Big Crow*]." *Garlich*, 951 F.2d at 164. Subsequent cases also have observed that the departure authorized in *Big Crow* is limited to cases where a defendant overcame many substantial obstacles presented by the difficult life on the reservation. *See, e.g., United States v. Alex One Star*, 9 F.3d 60, 61 (8th Cir.1993) (*Big Crow* departure based on defendant's excellent employment record and other consistent efforts to overcome difficult conditions of reservation life). Given the fact that Haversat and the district court failed to point to any evidence in record to show how Haversat "struggled in a difficult environment" or otherwise overcame some significant hardship, the district court's downward departure was not authorized under *Big Crow*.

■ Charitable or volunteer activities conceivably can serve as the basis for downward departure but only where those activities are truly exceptional in nature. *See*

---

5. We specifically noted in *Garlich* that the defendant's attempt to rely on *Garcia* was misplaced. 951 F.2d at 164. We also note that U.S.S.G. § 3E1.1 was amended in 1992 to authorize an additional level of departure for offenses at level 16 or greater for early notification of a defendant's intention to plead guilty "permitting the court to allocate its resources efficiently." The provision by the Sentencing Commission for rewarding assistance to the courts in the efficient allocation of its resources as part of an acceptance of responsibility adjustment reinforces our view that the subject is to be treated there and not as a departure topic.

*United States v. Neil,* 903 F.2d 564, 565–66 (8th Cir.1990); *see also* U.S.S.G. § 5H1.11, p.s. (Nov.1991) (civic, charitable, or public service, as well as employment related contributions and record of prior good works, "not ordinarily relevant in determining whether to depart under 5K2.0."). Departure on that basis is appropriate only where the "district court 'finds an atypical case, ... where [the] conduct [in question] significantly differs from the norm,'" *Neil,* 903 F.2d at 565 (quoting U.S.S.G. Ch. 1, Pt. A, 4(b) at 1.6 (Oct. 1987)). We conclude that Haversat's charitable and volunteer activities, while considerable, do not make him an *atypical* defendant in antitrust price-fixing cases. A number of his codefendants, including Gibson, for example, have made identical arguments in support of downward departure based on equally worthy records of charitable and volunteer activity. It would appear that high-level business executives, those who are in a position to commit Sherman Act violations, also enjoy sufficient income and community status so that they have the opportunities to engage in charitable and benevolent activities. *See* U.S.S.G. § 5H1.10 (socio-economic status not relevant to determination of sentence). Haversat's activity, while laudible, is not extraordinary. Accordingly, we conclude that the district court's downward departure on the basis of Haversat's charitable activities and good character was not permissible because there has been no showing that "'the circumstances the district court relied on for departure are sufficiently unusual in kind or degree to warrant departure.'" *Sweet,* 985 F.2d at 445 (quoting *Lara–Banda,* 972 F.2d at 960); *see also United States v. Groene,* 998 F.2d 604, 607–08 (8th Cir.1993) (reversing as clear error district court's finding that circumstances demonstrated that defendant's community service was sufficiently extraordinary to justify downward departure).

### (3) *Coercive Economic Influence of Stanley*

■ The district court also found that the coercive economic influence of Stanley on the other participants in the conspiracy, including Haversat, provided an additional reason to depart downward. Even assuming that such facts existed, this is not a sufficient basis for departure. The Guidelines explicitly state that "[t]he Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence." U.S.S.G. § 5K2.12, p.s. Thus, the district court erred in relying on the economic coercion of Stanley as a ground for departure.

### (4) *Relative Newcomer Who Lacked Courage to Object*

The district court also noted that it departed downward because Haversat "was a relative newcomer to this level of industry and just 'swam with the crowd' without exercising the courage to object to the unlawful price fixing." (Appellant's Addend. at 8.) We need not determine whether this constitutes sufficient legal grounds for departure because there is simply no factual support for the district court's statements. It is undisputed that Haversat was not a newcomer to this level of industry as he had been the President of McKinney from 1977 to 1986 when the conspiracy began. Likewise, Haversat did not simply "swim with the crowd." He jumped into the pool willingly and was a participant from the very beginning of the scheme.

We find that none of the reasons provided by the district court support the downward departure in sentencing Haversat. Accordingly, we set aside his sentence and remand for resentencing pursuant to 18 U.S.C. § 3742(f)(1).

### B. *Departure in Gibson's Sentencing*

The district court recited a number of grounds to support a downward departure in sentencing Gibson. Many of the reasons provided were identical to those recited in support of Haversat's departure. The district court found that downward departure was warranted for Gibson because: Gibson had led an exemplary life filled with numerous charitable activities and contributions; Gibson assisted the court by entering a nolo plea that facilitated the disposition of the case; Gibson's participation in the crime was

caused in part by the coercive economic influence of Stanley; and Gibson was of advancing age and his wife suffers serious health problems. The reasons we stated above for rejecting the first three of these grounds for departure in Haversat's case apply equally to Gibson's case. Thus, we find that the first three grounds do not support a downward departure for Gibson.

■ Gibson argues strenuously that his extraordinary family situation presents sufficient grounds for the district court's downward departure.[6] The district court stated in its final judgment that it was departing downward based, in part, on the fact that Gibson's wife had very severe mental health problems. (Appellant's Addend. at 4.) "Family ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the guidelines." U.S.S.G. § 5H1.6, p.s. However, we have found that "[e]xtraordinary family circumstances, i.e., outside of the 'heartland' of cases the Guidelines were intended to cover, can be the basis for a downward departure." *United States v. Harrison*, 970 F.2d 444, 447 (8th Cir.1992) (internal quotations omitted); *see also Neil*, 903 F.2d at 565 (policy statement that factor is *ordinarily* not relevant necessarily implies that the factor may be relevant in extraordinary cases).

■ We find that Gibson's truly exceptional family circumstances make this an appropriate case for a downward departure. Mrs. Gibson has suffered severe psychiatric problems, which have been potentially life threatening. (Gibson's Present. Rpt. at 10.) Mr. Gibson has been actively involved in her care. (*Id.*) Dr. Slovak, Mrs. Gibson's treating physician, has characterized David Gibson's participation as an "irreplaceable" part of Dr. Slovak's treatment plan for Mrs. Gibson. (Defs.' Jt.App. at 227–28.) Dr. Slovak depends on Mr. Gibson to identify the beginning of any regressions and to seek out immediate treatment to avoid "a serious situation." (*Id.*) Dr. Slovak's opinion is that

"Mrs. Gibson would not do well if separated from the aid of her spouse, and I [Dr. Slovak] would have grave clinical concerns that her medical management could be safely continued without the ongoing presence of her spouse, even if that separation was only a matter of several weeks." (*Id.*) The totality of these factors make this a permissible basis for departing downward on Gibson's sentence. *See United States v. Gaskill*, 991 F.2d 82, 85–86 (3d Cir.1993) (finding circumstances merited a downward departure where, among other things, defendant's wife had 20–year history of mental illness and defendant provided care for her and his incarceration would jeopardize her well-being).

■ However, because the district court relied upon both permissible and impermissible factors in making its downward departure, Gibson's sentence is appropriate only if: (1) "the district court would have imposed the same sentence had it not relied upon the invalid factor or factors", and (2) the departure is reasonable. *Williams*, — U.S. at —––——, 112 S.Ct. at 1120–21. There is really no dispute that the district court would have imposed the same sentence even if it had not relied on the impermissible factors. We find, however, that the district court abused its discretion by granting an unreasonable departure in this case. *See Sweet*, 985 F.2d at 445 (reasonableness of the departure reviewed under abuse of discretion standard).

■ The district court departed downward the equivalent of five offense levels and then declined to impose confinement or even probation. The Sentencing Commission has emphasized that the sentencing court should impose some *confinement* in all but the rarest criminal antitrust cases. *See* U.S.S.G. § 2R1.1, comment. (backg'd.) (noting that "in very few cases will the guidelines not require that some confinement be imposed"). The Sentencing Commission also stated that it "believes that the most effective method to deter individuals from committing [antitrust]

---

6. The district court also noted Gibson's advancing age as a reason for departure. There is no dispute, however, that Gibson was only 50 at the time of sentencing. To the extent that the district court relied on this factor, it is not sup-

ported by the evidence in this case and should not be considered on remand. *See* U.S.S.G. § 5H1.1 (age not ordinarily relevant for departure).

crime is through imposing short prison sentences coupled with large fines. The controlling consideration underlying this guideline is general deterrence." *Id.*

This is not the rarest of cases where confinement should be avoided altogether.[7] The district court described this antitrust conspiracy as "unusually long and harsh and well planned." (Tr. Gibson's Sent. at 195.) The Sentencing Guidelines provided the district court with the ability to craft a sentence that imposes some form of confinement to meet the expressed goal of U.S.S.G. § 2R1.1 and that still takes into consideration Gibson's need to be available to render care to his wife. *See* U.S.S.G. §§ 5B1.1(a)(1), 5B1.3(d), 5B1.4(b)(20), & 5F5.2 (1987). The failure to impose such a sentence and to depart all the way down to only a fine was unreasonable in this case. Hence, the only permissible reason for the departure, Gibson's exceptional family circumstances, does not "justify the magnitude of the departure," *Williams,* ——— U.S. at ———, 112 S.Ct. at 1121, and we set aside Gibson's sentence and remand for resentencing in accordance with the above text, *see* 18 U.S.C. § 3742(f)(2)(B).

## IV.

We additionally must note that at both Haversat's and Gibson's sentencings, the district court repeatedly and outwardly displayed its disdain for the Sentencing Guidelines. The district court explicitly stated its disagreement with the level of punishment the Guidelines impose for "white collar crimes" like those committed in this case. (Defs.' Jt.App. at 183–85.) The district court went as far as to announce at Haversat's sentencing that "if I tried to apply the guidelines in their full bloom of—of completeness, I would be making a mistake that would add to the injustice," (*Id.* at 188), and that "it would not be appropriate to use the guidelines in all their bean counting glory." (*Id.* at 189.)

▆▆ We have serious concerns about the district court's comments and in particular its comments indicating a reluctance (or a refusal) to apply the Guidelines. The Guidelines are law and it is abundantly clear that the district court does not have the discretion or power to disregard particular Guidelines it does not like. *See United States v. Maul–Valverde,* 10 F.3d 544, 546 (8th Cir.1993) ("A court may not depart because it considers a Guideline misguided."); *United States v. Marshall,* 998 F.2d 634, 635 (8th Cir.1993) ("Disagreement with the Guidelines does not justify a departure."). The record provides great uncertainty about whether the district court carried out its duty to follow and apply the Guidelines in this case. This uncertainty is itself yet another reason to remand for resentencing. *See United States v. Ford,* 17 F.3d 1100, 1104 (8th Cir.1994) (comments made by district court suggesting decision to grant downward departure may have been based on dissatisfaction with Guidelines requires remand for clarification or resentencing).

## V.

Haversat and Gibson argue on cross appeal that if we reverse and remand for resentencing, then the district court should be allowed to reconsider awarding them acceptance of responsibility. They argue that while the district court indicated at sentencing that acceptance probably was not appropriate, it declined to actually rule on acceptance because it was departing downward. They misread the record. At Haversat's sentencing, for example, the district court stated:

> In the case yesterday, *I denied the acceptance of responsibility bonus to Mr. Gibson, and I do so in this case, too.* I don't think it is clear that this is the kind of case where there have been truly acceptance of responsibility considering the totality of the circumstances. [sic] But on the other hand, I think it is a moot question and almost a theoretical question because I have departed from the guidelines in each of these cases, and there is no question

---

7. This case differs from *Gaskill* where the court found that there was a "lack of any end to be served by imprisonment other than punishment." 991 F.2d at 86. Here, there is an important end to be served by imprisonment—general deterrence.

that I will depart from the guidelines in this matter also.

(Defs.' Jt.App. at 181.) (emphasis added). The record clearly indicates that the district court denied a reduction for acceptance of responsibility, but then stated that its ruling did not matter because it was departing downward. We deny the request of Haversat and Gibson to allow the district court to reexamine the acceptance of responsibility question on remand, as the district court already has denied such a reduction and its finding will control on remand.

To the extent that Haversat and Gibson have argued that the district court erred in finding that they did not accept responsibility, we find that the district court's decision was not clearly erroneous. Both Haversat and Gibson pleaded nolo contendere—a plea which does not admit responsibility. Moreover, they have continued to minimize their role in the conspiracy throughout the proceedings, even on appeal.

## VI.

Haversat and Gibson also argue that the district court erred in determining the volume of commerce involved in this case, *see* U.S.S.G. § 2R1.1(b)(2), and in adding a two-level increase in offense level based on that erroneous computation. They contend that the presentence investigative report improperly calculated volume of commerce to be in excess of $20,000,000 by including over $5,000,000 in sales that were delivered after the conspiracy reached full bloom in April of 1987. They contend that the district court erroneously adopted the miscalculation. They argue that the amount of commerce involved was no more than $14,336,429, just below the $15,000,000 break point where the second level is added for volume of commerce under U.S.S.G. § 2R1.1(b)(2)(D) (1987).

We review the district court's factual findings at sentencing for clear error. 18 U.S.C. § 3742(e). We will reverse only if we are " 'left with the definite and firm conviction that a mistake has been committed.' " *United States v. Lawrence*, 915 F.2d 402, 408 (8th Cir.1990) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct.

1504, 1511, 84 L.Ed.2d 518 (1985)). We have reviewed the evidence and find no clear error in the district court's determination of the volume of commerce involved. The defendant's expert essentially testified that *all* pre-April 1987 sales must be excluded from the government's computation of volume of commerce. The record is clear, however, that the conspiracy was underway in May of 1986 when the new price books were introduced and that significant sales were made between May of 1986 and April of 1987 under the pricing scheme of the conspiracy. Hence, we do not find the district court committed clear error by failing to be persuaded by the defendants' expert. Accordingly, we affirm the district court's finding on the volume of commerce in this case, and that finding will control at resentencing.

## VII.

For the reasons stated above, we affirm the district court's findings on acceptance of responsibility and volume of commerce affected by the price-fixing conspiracy but reverse the sentences imposed and remand for resentencing.