No. 95-2830MN

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Simon Frank Weise,                 *
                                   *
          Appellant.               *

No. 95-3015MN

                                        Appeals from the United States
                                        District Court for the District
                                        of Minnesota.

United States of America,          *
                                   *
          Appellant,               *
                                   *
     v.                            *
                                   *
Simon Frank Weise,                 *
                                   *
          Appellee.                *
                                   _____

                    Submitted:  March 12, 1996

                      Filed:  July 10, 1996
                             _____

Before FAGG, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.
                             _____


FAGG, Circuit Judge.


     After a heavy night of drinking on the Red Lake Indian Reservation,
Simon Frank Weise fatally stabbed Alan Maxwell in the chest with an eight-
inch butcher knife.  A jury convicted Weise of second-degree murder, see
18 U.S.C. § 1111(a) (1994), and Weise appeals.  The Government cross-
appeals the district court's decision to sentence Weise below the
applicable guideline range.

See 18 U.S.C. § 3553(b) (1994); U.S.S.G. § 5K2.0 (1994). We affirm Weise's conviction, but remand for further consideration of one sentencing issue.

Weise contends the police violated his due process rights by failing to preserve critical evidence. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Specifically, Weise challenges the police's failure to give him a blood alcohol test. Weise also complains the police did not collect the empty beer cans at the crime scene, or record the telephone call reporting the stabbing. Contrary to Weise's view, the failure to preserve potentially useful evidence does not violate due process unless the defendant can show the police acted in bad faith. Id. In this case, the district court's finding that the police officers did not act in bad faith is not clearly erroneous. The officers testified that Weise appeared to be in control of his thoughts and actions at the time of his arrest. Further, the officers interviewed all of the witnesses to the stabbing, took several photographs of the crime scene, and did not know that the telephone recording equipment was broken. In sum, we see no due process violation.

Weise also contends the district court abused its discretion by allowing Maxwell's thirteen-year-old son to testify. According to Weise, the son's testimony was irrelevant and unfairly prejudicial. See Fed. R. Evid. 401, 403. We disagree. Although Maxwell's son did not witness the murder, his testimony explained why and when Maxwell went to the house where the murder occurred. We cannot say the district court clearly abused its discretion in admitting this evidence. See United States v. Mitchell, 31 F.3d 628, 631 (8th Cir. 1994). Weise's contention that the district court abused its discretion by allowing Maxwell's brother and several other witnesses to testify about Maxwell's peaceful character is without merit. The Government properly offered this testimony to rebut Weise's claim that Maxwell was the aggressor. Fed. R. Evid. 404(a)(2).

Weise next contends the prosecutor made an improper statement during final argument that encouraged the jury to consider the loss suffered by Maxwell's family.  In arguing against the logic of Weise's mistaken self-defense theory, the prosecutor stated, "[T]hat [stabbing] could happen to you and that could happen to me.  It happened to Alan Maxwell, and, because it happened to Alan Maxwell, his son does not have a father today.  His brother is without a brother."  Weise objected to this remark, but the objection was overruled without any curative action by the district court.  Even assuming the statement was improper, the prosecutor's unrepeated remark simply told the jury the obvious consequences of Maxwell's death.  Further, the Government produced strong evidence of Weise's guilt.  In the context of the entire trial, we do not believe the prosecutor's single remark was constitutionally prejudicial.  See United States v. McGuire, 45 F.3d 1177, 1189-90 (8th Cir.), cert. denied, 115 S. Ct. 2558 (1995).

Weise next contends the district court improperly instructed the jury.  First, Weise challenges the district court's instruction on the lesser-included offense of voluntary manslaughter.  Weise argues the district court's instruction was incomplete because it failed to tell the jury that "voluntary manslaughter requires an intentional killing, unlike involuntary manslaughter which involves an unintentional killing."  According to Weise, the instruction created the possibility that he could be convicted of voluntary manslaughter "based on a conclusion that he was merely reckless or negligent."  Assuming Weise's argument might be relevant in a case where the jury must distinguish between the mental state requirements of voluntary and involuntary manslaughter, see United States v. Paul, 37 F.3d 496, 499-500 (9th Cir. 1994), this is not that kind of case.  Here, Weise does not challenge the district court's decision to instruct the jury on first-degree murder and the lesser-included offenses of second-degree murder and voluntary manslaughter, but not to submit the lesser offense of involuntary manslaughter.  Thus, for the purposes of the greater and lesser

offenses submitted in this case, the district court correctly stated that first-degree murder is a killing with malice aforethought and premeditation, second-degree murder is a killing with malice aforethought, and voluntary manslaughter is a killing without the malice required for murder because the killing occurs in a heat of passion. See 18 U.S.C. §§ 1111(a), 1112(a) (1994); United States v. Bordeaux, 980 F.2d 534, 537 (8th Cir. 1992). Unlike Weise, we find no prejudicial error in the district court's instruction.

Next, Weise challenges the district court's instruction that told the jury not to consider Weise's voluntary intoxication when deciding the reasonableness of Weise's self-defense claim. To succeed on his claim of self-defense, Weise needed to show he had reasonable grounds to believe he was in imminent danger of death or serious bodily injury. United States v. Deon, 656 F.2d 354, 356 (8th Cir. 1981) (per curiam). Although the jury may consider the circumstances confronting Weise, see id., the reasonableness of Weise's belief is not measured through the eyes of a reasonably intoxicated person, see 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 4.10(d), at 558 (1986). We conclude the district court properly told the jury to disregard Weise's intoxication when deciding if Weise's belief of imminent peril was founded on reasonably perceived circumstances. See United States v. Yazzie, 660 F.2d 422, 431 (10th Cir. 1981), cert. denied, 455 U.S. 923 (1982).

Finally, Weise challenges the district court's mistaken self-defense instruction. After reading the instructions to the jury, the district court invited both parties to make any last-minute objections. In response, Weise's counsel expressed concern "about the second element of the mistaken self-defense instruction because it appears to require a reasonable perception of an imminent threat of death, [and] that may actually overstate that, but [otherwise] no objection." This unrevealing objection neither explained how

-4-

the second element overstated the law nor suggested a cure so the judge could correct any potential defect in the mistaken self-defense instruction.  See United States v. Martin, 511 F.2d 148, 152 (8th Cir. 1975).  Thus, Weise's objection was simply a general objection that preserved nothing for appellate review.  See Fed. R. Crim. P. 30; United States v. Bettelyoun, 16 F.3d 850, 852 (8th Cir. 1994).  Later, during the jury's second day of deliberations, Weise's counsel again took aim at the second element of the mistaken self-defense instruction by tendering a letter and a revised proposed instruction to the district court.  This time counsel put his cards on the table and asked to district court to modify its instruction by replacing the words "imminent danger of death or serious bodily harm" with the words "imminent danger of injury."  Weise's argument on appeal is based on this objection, which was neither placed of record nor ruled on until after the jury returned its verdict.  Although sufficiently distinct, Weise's objection was untimely and the claimed error is not reviewable.  See Fed. R. Crim. P. 30; United States v. Williams, 923 F.2d 76, 78 (8th Cir.) (per curiam), cert. denied, 502 U.S. 841 (1991). Additionally, Weise suggests the district court's instruction did not properly explain the theory of mistaken self-defense.  Weise did not raise this objection in the district court.  In fact, at the jury instruction conference when the district court decided to use its own mistaken self-defense instruction instead of giving Weise's proposed instruction, Weise's counsel stated, "I have no objection to the [district court's mistaken self-defense] instruction."  We will not consider Weise's argument presented for the first time on appeal.  See United States v. Dixon, 51 F.3d 1376, 1383 (8th Cir. 1995).  Because Weise's objections were not properly preserved, we review the challenged instruction for plain error, and finding no miscarriage of justice, no useful purpose would be served by an extended discussion.  See United States v. Ryan, 41 F.3d 361, 366 (8th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1793 (1995).

Turning to Weise's sentence, Weise contends the district court should have decreased his offense level because he accepted responsibility for his offense.  See U.S.S.G. § 3E1.1(a), (b)(1).  Although Weise admitted stabbing Maxwell, Weise has never accepted responsibility for second-degree murder.  To the contrary, Weise has consistently denied that he acted with malice aforethought.  Thus, the district court properly denied Weise's request for an acceptance of responsibility adjustment.  See United States v. Makes Room For Them, 49 F.3d 410, 416 (8th Cir. 1995).

On cross-appeal, the Government contends the district court improperly granted Weise's request for a downward departure under U.S.S.G. § 5K2.0.  The district court may impose a sentence outside the applicable guideline range if there are mitigating circumstances "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."  18 U.S.C. § 3553(b) (1994); see U.S.S.G. § 5K2.0.  Relying on United States v. Big Crow, 898 F.2d 1326, 1331-32 (8th Cir. 1990), the district court decided "the difficult conditions on the Red Lake Reservation, [Weise's] record of steady employment and his maintenance of family ties and responsibilities are sufficiently unique in degree to constitute grounds for departure."  Aside from reservation life, the district court recognized that Weise's work record and family relationships were not otherwise unusual enough to warrant departure.  See U.S.S.G. §§ 5H1.5, 1.6.  The district court also decided a departure was warranted because Weise's crime was a single act of aberrant behavior.  See U.S.S.G. ch. 1, pt. A, intro. 4(d).  We review the district court's decision to grant a downward departure for an abuse of discretion, Koon v. United States, No. 94-1664, 1996 WL 315800, at *8 (U.S. June 13, 1996), and the decision will "in most cases be due substantial deference," id. at *12.  Departures must be limited, however, to those cases in which the defendant's "circumstances differ significantly from the normal case."  United States v. Garlich, 951 F.2d 161, 164 (8th Cir. 1991).

After we authorized a downward departure in Big Crow based on the defendant's "excellent employment history, solid community ties, and consistent efforts to lead a decent life in [the] difficult environment [of the reservation]," Big Crow 898 F.2d at 1332, our later cases recognized the departure authorized in Big Crow does not apply "where the defendant fail[s] to show that he `struggled in a difficult environment like the defendant in [Big Crow].'" United States v. Haversat, 22 F.3d 790, 795 (8th Cir. 1994) (quoting Garlich, 951 F.2d at 164), cert. denied, 116 S. Ct. 671 (1995); United States v. One Star, 9 F.3d 60, 61 (8th Cir. 1993). In other words, it is one thing when a defendant merely lives on a reservation where life may be difficult for some and not for others, but it is telling when a defendant personally experiences and overcomes the hardships of reservation life.

Although Weise mentioned some difficulties of reservation life (high unemployment, "adverse" living conditions, and violence on the reservation) in a position paper he filed before sentencing, Weise neither provided details nor made clear that he struggled against these difficulties and that his accomplishments stand out because he succeeded. See Haversat, 22 F.3d at 795; One Star, 9 F.3d at 61. Indeed, the presentence report shows that despite Weise's parents' problems with steady employment and alcohol, Weise's family upbringing was good, Weise's parents always provided for their children's necessities, and there was never any physical or sexual abuse in the family. Even though the record provides some support for the district court's general understanding of living conditions on the reservation, we cannot tell what there was about the impact of reservation life on Weise that makes his case "different from the ordinary case where the factor[s] [of steady employment and stable family ties are] present." Koon, 1996 WL 315800 at *10. In short, we simply do not have enough information to review the district court's exercise of its sentencing discretion. Thus, we must remand this sentencing question to the district court for "a refined assessment" of the departure decision

on an expanded record.  Id. at *12.

Turning to the other ground for the district court's departure, we disagree with the district court's view that Weise's criminal conduct was aberrant behavior.  The district court relied on the opinions of Weise's psychologist and lay witnesses that Weise "was not prone to violence." Contrary to the district court's view, aberrant behavior "must be more than merely something `out of character.'"  United States v. Carey, 895 F.2d 318, 325 (7th Cir. 1990).  Instead, a single act of aberrant behavior contemplates a "`spontaneous and seemingly thoughtless [act].'"  Garlich, 951 F.2d at 164 (quoted case omitted).  Here, Weise's conduct was neither spontaneous nor thoughtless.  Unprovoked, Weise got up from the table where Maxwell was seated, walked across the room, selected an eight-inch butcher knife, returned to the table, and then stabbed Maxwell twice in the chest. In these circumstances, Weise's conduct was not a single act of aberrant behavior.

Accordingly, we remand for further consideration of the § 5K2.0 sentencing issue; otherwise, the judgment of the district court is affirmed.

JOHN R. GIBSON, Circuit Judge, concurring in part and dissenting in part.

While I concur with the decision of the court today rejecting Weise's claims on appeal, I respectfully dissent from the decision reversing the downward departure under U.S.S.G. § 5K2.0.

The court today states Weise makes no showing that he struggled in a difficult environment or otherwise overcame some significant hardship. It elevates our language in United States v. Haversat, 22 F.3d 790 (8th Cir. 1994), cert. denied, 116 S. Ct. 671

(1995), to create a more stringent burden for a <u>Big Crow</u>[1] departure. It then holds Weise offered only some evidence, but did not provide the connecting link of showing how the conditions on the reservation affected him so as to make his case extraordinary. In doing so, the court fails to give proper consideration to the statute prohibiting limitation of the information district courts may use in sentencing, and fails to give the district court's ruling the deference it is entitled to.

The Supreme Court has in recent days clarified the deference that is due a decision of a district judge to depart downward from a guideline sentence. <u>Koon v. United States</u>, Nos. 94-1664, 94-8842, 1996 WL 315800 (U.S. June 13, 1996). After stating that such a decision may be owed no deference when there has been a mathematical error in applying the guidelines, the Court said:

> A district court's decision to depart from the Guidelines, by contrast, will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court.

<u>Id.</u> at *12. In considering whether the case falls outside the heartland of cases in the guidelines, the Court continued:

> Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

<u>Id.</u> The Court continued:

---

[1] <u>United States v. Big Crow</u>, 898 F.2d 1326 (8th Cir. 1990).

-9-

> "To ignore the district court's special competence--about the `ordinariness' or `unusualness' of a particular case--would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case. . . ."

Id. (quoting United States v. Rivera, 994 F.2d 942, 951 (1st Cir. 1993)).

The district court specifically enumerated examples of Weise's efforts:  that he had maintained employment over the last five and a half years, and that he was a good parent to his own children and the children of his companion.  The district court stated that while these facts may not appear striking, "considering the difficult conditions on the Red Lake Reservation, defendant's record of steady employment and his maintenance of family ties and responsibilities are sufficiently unique in degree to constitute grounds for departure."

The court's decisive point is that, while it finds some support for the district court's understanding of living conditions on the Red Lake Indian Reservation, it cannot tell what there was about this that makes the impact of reservation life on Weise different from the ordinary case, and argues that it does not have enough information to review the district court's exercise of its discretion.  In doing so, the court simply fails to accord the deference Koon requires, or to consider the information before the district judge upon which he made his findings.

The presentence investigation report adopted by the district court stated that when Weise was growing up, "alcohol abuse and solid employment were issues [Weise's] family constantly struggled with as do many families on the reservation today."  Weise filed a position paper before the sentencing, which makes factual assertions about high unemployment and other "adverse" living conditions on the Red Lake Reservation.  Weise's counsel also

attached copies of judgments in the cases of other Red Lake Reservation inhabitants who committed homicides; significantly, the district judge in this case was the judge in two of those other Red Lake homicide cases. Counsel also submitted the report of Dr. Cronin, a psychologist, who stated that Weise was fearful because of violence on the reservation. At sentencing, counsel made a formal proffer of the testimony of Chief Judge Graves, who was familiar with Weise's case and with crimes on the Red Lake Reservation, and who would have stated that within the spectrum of homicide defendants and homicide incidents in that violent community, Weise falls at the low end, both of the individuals convicted of the offenses and taking into account the circumstances of the offense itself. At trial, Weise introduced testimony of community members of his peaceable character.

It is significant that counsel for the United States made no objections to these statements of Weise's counsel at sentencing. Further, the United States's responses to Weise's position paper on sentencing, while expressing generalized opposition to a downward departure and arguing that no atypical factor or combination of factors had been shown that would justify the departure, made no objection to any of the specific statements in Weise's position paper. The government failed to object to the statements in Weise's position paper on sentencing, to statements made by counsel at sentencing, or to the district court's factual findings. See United States v. Sneath, 557 F.2d 149, 150 (8th Cir. 1977) (because defendant did not deny statements in the presentence reports that he had lied to the FBI, he could not assert that he was deprived of an opportunity to rebut them). The government's failure to object should preclude it from raising this issue.

The district court's statement that it recognized the difficult conditions on the reservation and that it was a violent place considering its small population are statements of the court's acquaintance with the conditions on the reservation. We

have in the past affirmed a downward departure based, in part, on a similar assessment of the hardships of reservation life and a defendant's unusual efforts to lead a productive life there.  The district court in United States v. Big Crow, 898 F.2d 1326, 1331 (8th Cir. 1990), departed downward on the grounds that the defendant had consistently struggled to overcome the "difficult conditions which the court knows exist[] in Indian country," a finding not unlike that before us in this case.  Accord United States v. One Star, 9 F.3d 60, 61 (8th Cir. 1993).  Where the findings of the district judge demonstrate knowledge of the conditions on the reservation, we should not require production of evidence on this issue absent objection by one of the parties.

This court in United States v. White Buffalo, 10 F.3d 575 (8th Cir. 1993), distinguished Big Crow and One Star.  In White Buffalo, the court stated that a downward departure could not be justified under U.S.S.G. § 5K2.0, pointing to the distinction that White Buffalo supported no dependents and presented no evidence of his standing in the community.  Id. at 577.  Similarly, in Haversat, 22 F.3d at 795-86, the defendant, a corporate president, was awarded a downward departure based on his assistance to the court, his good character and otherwise exemplary life, and the coercive economic influence of his business competitor.  We reversed, distinguishing Big Crow.  While we stated in Haversat that the district court failed to point to any evidence in the record to show how Haversat struggled in a difficult environment or otherwise overcame some hardship, this statement has significance primarily in pointing to the factual distinction, rather than an insufficiency in the evidence.  The factual distinctions between this case on the one hand, and White Buffalo and Haversat on the other, render White Buffalo and Haversat inapposite here.

Moreover, it is most significant that Koon requires a greater degree of deference than evidently was employed in Haversat and White Buffalo.

The record in this case is adequate to support the district court's findings.  See generally United States v. Wise, 976 F.2d 393 (8th Cir. 1992) (en banc) (in sentencing proceedings district court may consider a wider array of evidence than would be admissible at trial), cert. denied, 113 S. Ct. 1592 (1993).

Congress has made clear in 18 U.S.C. § 3661 (1994):

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

This language is paraphrased in U.S.S.G. § 1B1.4, which states that, in determining whether a departure from the guideline range is warranted, "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."  It was just this kind of information the district court considered in making its findings in this case.

The court, in commenting on Weise's upbringing, simply does not address the substance of the district court's findings.  Certainly, its discussion fails to accord the district court's findings the substantial deference to which they are entitled, due to the institutional advantage the district courts possess in dealing with such issues.  See Koon, 1996 WL 315800 at *11.

It suffices to say that the court today departs from the closing words of the Supreme Court in Koon where, after pointing to the goal of reducing disparities in sentencing, the Court states:

> This too must be remembered, however.  It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study

in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States District Judge. Discretion is reserved within the Sentencing Guidelines, and reflected by the standard of appellate review we adopt.

Id. at *21.

I would affirm the sentence as well as the conviction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.